Leon Gene Clugston
4555 South Navigator Circle #7
Wasilla, Alaska [99654]
907-357-1093
Without Assistance of Counsel

RECEIVED

JUN 0 9 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

# The United States of America

# The United States

# District of Alaska

# District Court of the United States

**Leon Gene Clugston**

Plaintiff

*Versus.*

**Eric Smith, individual capacity (personal capacity); and
Kevin D. Williams, individually (personal capacity); and,
Rachel King, individually (personal capacity); and,
Richard Romero, individually (personal capacity); and,
Ray A. Hollenbeck, individually (personal capacity); and,
Crystal Dawn Langham, individually (personal capacity); and,
John Does 1-20**

Defendants

**Case _____**

**Complaint, Injunction, and Writ of Quo Warranto
With a Trial by Jury under the
Seventh Amendment According to the Course of the Common Law**

## I.

*Comes now*, the man Leon Gene Clugston ("Clugston"), an American citizen, citizen of the United States of America, Natural Born Native and citizen of the foreign state of Alaska domiciled in the territorial boundaries of Alaska with this Complaint and Injunction with A Trial by Jury the Seventh Amendment According to the Course of the Common Law. I do demand a Trial by Jury of my peers being "citizens of the United States of America" and a citizen of one of the several States arising under the Constitution of the United States, the Laws of the United States which shall be made pursuant thereof, and Bill of Rights as amended by the qualified Electors of the several States ("Constitution") and secured in the Northwest Ordinance of 1787 and the Seventh Amendment according to the course of the common law and with the Federal Rules of Court 38 subservient.

## II.

I am invoking the de jure Court of the United States arising under Article III of the Constitution in all Cases in Law and Equity under the authority of the United States exercising the judicial Power of the United States ("Article III") in this instant Case.

## III.

I am invoking a de jure judicial Officer of the United States for a District Court of the United States ("the Court") under the Judiciary Act of 1789 as lawfully amended by the Congress of the several States ("1 Stat 73"), which must be an "Officer of the United States", i.e., a Judge of the District Court of the United States", arising under the mandatory requirements of the Constitution in Article 2 Section 2 Clause 2, Article VI, 1 Stat 23, Oath of Office as a judicial

Officer under 1 Stat 76 Section 8, and Civil Commission under the Signature of the President of the United States and the Seal of the United States by the Secretary of the State of the United States.

## Jurisdiction
### IV.

The Court exercises cognizance of this Case in all Cases in Law and Equity arising under the Constitution, arising under Article I Section 9 Clause 3 (Congress) shall not pass Bills of Attainder and Article I Section 10 Clause 1 (the several States) shall not pass Bills of Attainder, arising under the Supremacy Clause of the Constitution of Article VI (spending Power of Congress and substantive regulations), arising under Article I Section 10 Clause 3 (Compact Clause via authorization of cooperative agreements by Congress), arising under Article III, under 1 Stat 23, under 1 Stat 73, under the Northwest Ordinances of 1787, Privileges and Immuniteids of the several States arising under Article IV, Section 2 Clause 1, under the Treaty with Russia ("15 Stat 539") in the year of 1867 (access directly to the Constitution), under 28 U.S.C. § 1331 (federal questions), and 28 U.S.C. § 1391 (venue).

## Parties
### V.

The Court has personal jurisdiction of all of the Parties in this instant Case in Law and Equity arising under Article III.

### VI.

a.    **Clugston** is an American citizen, "citizen of the United States of America", Natural Born Native and citizen of the foreign state of Alaska domiciled in the territorial boundaries of Alaska.  Clugston has no Social Security Number in his *true name*, being two

Christian Names and one Family name, with all being Proper Nouns, i.e. only the first letter being capitalized. Clugston does not claim being a "citizen of the United States" as his primary citizen status, but claims as his primary citizen status his fundamental rights in one of the several States.

b.    Clugston is not a "citizen of the United States" as used by Congress as found 8 U.S.C. §§1401, 1404, and 5 U.SC. 552a(2) and (13), and has not knowingly and denies any application for any federal benefit or gratuity, and has not on the record waived his inalienable rights, fundamental rights, i.e. rights secured in the Constitution and other founding documents of the United States of America and the United States.

## VII.

a. Arising under the adjudged decision of *Hayburn's case*, 2 U.S. 408 (1792) the Supreme Court of the United States attempted to accommodate an "Act of Congress", in which the United States created rights against itself for the benefit widows and orphans and to regulate the invalid pensions as found in 1 Stat 325. The judges determined that there were two serious problems, even though it was a noble thing Congress was attempting to do. First, the judges would be "commissioners" holding another Office and not judges in a court of record, and second the appeal or errors of the judges' opinions could not be appealed in the judiciary, but instead went to the Secretary of War in the ***Executive Branch***. The holding was that no executive or administrative duties can be assigned to judges under Article III and said judges decisions can not be appealed or under altered by the executive Branch.

b.  As adjudicated again in 1851, this court held in the decision of *United States v. Ferreira*, 54 U.S. 40, concerning the treaty with Spain over the Florida territory obtained by the United States that judges acting in such a capacity would be commissioners, that this practice has been done by some of the judges of the Article III courts of the United States in the past, but that

it would cease in the future.  It was further held that in these types of situations, that the United States could not make an appearance, as the commissioners were not clothed with true judicial powers, and were only collecting evidence to which the Secretary of Treasury made the final determination.  This problem with the Executive Branch and Commissioners was again held in the adjudged decision of *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995).

c.  In *Muskrat v. United States*, 219 U.S. 346 (1911) it was again held that Congress could not enlarge the cognizance of the class of "Cases" of the Article III Courts, and also held that judges could not exercise the judicial Power of the United States under the Authority of the United States in Cases that could be altered, overturned, or changed by the Executive or Legislative Branch.  No executive Officer or even the legislatures are authorized to sit as a court of errors on judicial acts or opinions of this Court, *ibid* at 353.

d.  And being reaffirmed again in *Buckley v. Valeo*, 424 U.S. 1, 123 (1976) that executive or administrative duties of a nonjudicial nature may not imposed on judges holding office under Article III.  *United States v. Ferreira*, 54 U.S. 40 (1952);  *Hayburn's Case*, 2 U.S. 409 (1792).

## VIII.  Sovereignity of the People – Citizen Status

a.  The Declaration of Independence, which was the first political act of the American people in their independent sovereign capacity, lays the foundation of our National existence upon this broad proposition: 'That all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness.' Here again we have the great threefold division of the rights of freemen, asserted as the rights of man. Rights to life, liberty, and the pursuit of happiness are equivalent to the rights of life, liberty, and property. These are the fundamental rights which can only be taken away by due process of law, and which can only be interfered with, or the enjoyment of which can only

be modified, by lawful regulations necessary or proper for the mutual good of all; and these rights, I contend, belong to the citizens of every free government.  The American people are a free and sovereign people being a most sacred right to be fiercely defended, and this sovereignty itself remains with the people. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *Boyd v. Nebraska*, 143 U.S. 135, 159 (1892).

### IX.  American citizens

a. After the Revolution of 1776 there were the *original* States known as the "united States of America" (Declaration of Independence), American citizens being any of the people of any of the original States, and a citizen of New-York, citizen of Virginia, etc.  The allegiance to said *original* State(s) and the protections derived and secured therein were from being a citizen of New-York, citizen of Virginia, etc. and this has not changed.

b. The people born after July 4, 1776, i.e. *post natus*, were are all of the status of an "American citizens." *Inglis v. The Trustees of the Sailor's Snug Harbour in the city of New York*, 28 U.S. 99, 101, 120-126, 160, **164-167**. (1830).  The election of a change in allegiance ". . . rests on the ground of a mutual compact between the government and the citizen or subject, which it is said cannot be dissolved by either party without the concurrence of the other. It is the tie which binds the governed to their government, in return for the protection which the government affords them." *Ibid 124.*  Justice Story's pronouncement in *Shanks v. Dupont*, 28 U.S. 242, 246 (1830) was "The general doctrine, is that no persons can by any act of their own, without the consent of the government, put off their allegiance, and becomes aliens" and this has not changed.

## X.  citizens of the United States of America

a.  The Articles of Confederation of July 8, 1778 established the several States, i.e., "[T]he free inhabitants of each of these States, paupers, vagabonds, and fugitives from justice excepted, shall be entitled to all privileges and immunities of free citizens in the several States" and "The United States of America."  Even though the Naturalization laws authorized by Congress in the Constitution of the United States were not granted at this time, *a fortiori*, there were now "citizens of the United States of America."

b.  An American citizen and "citizen of the United States of America" was also used in international citizen issues as evidenced by 1 Stat 477.  The uniform Rule of Naturalization granted to Congress in Article I Section 8 Clause 4 is today codified in  8 U.S.C. § 1449 as a "citizen of the United States of America", remaining unchanged.  The Naturalization Certificate today is still granted to the newly naturalized man/woman as a "citizen of the United States of America."  There can be doubt as to the fact that a "citizen of the United States of America" is a citizen of any of the several States, and upon being domiciled in any of the several States, he is then clothed with the inherent and unalienable rights secured in the constitution of that particular one of the several States.

c.  Congress today still enters their Office as a "citizen of the United States of America" as, and not as a "citizen of the United States."

## XI.  Fourteenth Amendment

a.  The Fourteenth Amendment was ratified July 9, 1868 declaring that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;"  The 14th Amendment ". . . speaks only of privileges and immunities of citizens of the United States and does not speak of the those of the citizens of the several States."

*Slaughter-House Cases*, 83 U.S. 36, 24 (1872). And further *ibid 25*, ". . .but we wish to state here that it is only the former which are placed by this clause under the protection of the Federal Constitution, and that the latter, whatever they may be, are not intended to have any additional protection by this paragraph of the amendment."   The privileges and immunities which belong to citizens of the several States are left to State governments and are not placed under the special care of the Federal government *ibid 27*.

b.   Then *statutory* enactments of Congress under 14 Stat 27 were to clothe the Negros as *citizens of the United States* with the same existing unalienable rights as the citizens of any of the several States, i.e. as white citizens already possessed arising under the constitutions of one of the several States in which the white citizen was domiciled, *ibid 27, sec.1*.  See also 16 Stat. 144 sec. 16; 18 Stat. 336;  R.S. 1878 §§ 1977, 1978.

c.   The protections of the unalienable rights and allegiance of Petitioner and the Sovereignty and duty for the protection of same, rests alone with any of the several States for it's citizens, and this still remains unaltered by the addition of the Fourteenth Amendment for "citizens of the United States" (national citizenship) as held in the adjudged decision of *United States v. Cruikshank*, 92 U.S. 542, 553- 555 (1875), to wit:

> The rights of life and personal liberty are natural rights of man. 'To secure these rights,' says the Declaration of Independence, 'governments are instituted among men, deriving their just powers from the consent of the governed.' **The very highest duty of the States, when they entered into the Union under the Constitution, was to protect all persons within their boundaries in the enjoyment of these 'unalienable rights with which they were endowed by their Creator.' Sovereignty, for this purpose, rests alone with the States. It is no more the duty or within the power of the United States to punish for a conspiracy *554 to falsely imprison or murder within a State, than it would be to punish for false imprisonment or murder itself.**
> * * *
> The fourteenth amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws; **but this provision does not, any more than the one which precedes it, and which we have just considered, add any thing *555 to the rights which one citizen has under the Constitution against another. The equality of the rights of citizens is a principle of republicanism**. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. **That duty was originally assumed by the States; and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This amendment guarantees, but no more.**

The power of the national government is limited to the enforcement of this guaranty. *[Emphasis added]*

## XII. Privileges or Immunities of the citizens of the United States

a.  The unalienable rights secured and protected in the constitutions of the several States were not granted to the United States and was clearly withheld as stated in the 9th and 10th Amendments in the Bill of Rights.  There are few privileges and immunities of a citizen of the United States and in the adjudged decision of *Slaughter-House Cases*, 83 U.S. 36 (1872) articulated the certain privileges and immunities in the Constitution of the United States to people with the national citizenship, being a citizen of the United States imposed upon the States, *id.* at  26 being, to wit:

> [P]rohibition against *ex post facto laws*, *bills of attainder*, and *laws impairing the obligation of contracts. But with the exception of these and few other restrictions*, the entire domain of the privileges and immunities of citizens of the States, as above defined, lay within the constitutional and legislative power of the States, and without that of the Federal Government. *[Emphasis added]*

b.  Arising under the adjudged decision of *Crandal v. Nevada*, 73 U.S. 35 (1867) cited in *Slaughter-House Cases id.* at 27 are other privileges and immunities of a citizen of the United States enumerated, to wit:

> He has the *right to come to the seat of government to assert any claim he may have upon that government*, or to *transact any business* he may have with it. To *seek its protection*, to *share its offices*, to *engage in administering* its functions. He has a right *to free access to its sea-ports*, through which all the operations of foreign trade and commerce are conducted, *to the sub-treasuries, the land offices, the revenue offices*, and the *courts of justice in the several States*, and this right is in its nature *independent of the will of any State over whose soil he must pass in the exercise of it. [Emphasis added]*

c.  In *Slaughter-House Cases id* at 28 are some other privileges or immunities of a citizen of the United States, to wit:

> [A]nother privilege of a citizen of the United States is to demand the *care and protection* of the Federal government *over his life, liberty, and property when on the high seas or within the jurisdiction of a foreign government*. . . . The *right of peaceable assemble* and *petition for redress of grievances*, the *privilege of the writ of habeas corpus*, are rights guaranteed by the Federal Constitution. The *right to use the navigable waters of the United States*, however they may penetrate the territory of the several States, *all rights secured to our citizens by treaties with*

*foreign nations*, are dependent upon citizenship of the United States, and not citizenship of a State."

d.  In the adjudged decision of *Williams v. State of Mississippi*, 170 U.S. 213 (1898), to wit:

> " . . . ultimately in the power of review which this court may exercise over their judgments whenever **rights, privileges, or immunities claimed under the constitution or laws of the United States are withheld or violated**; and that the **denial or inability to enforce in the judicial tribunals of the states rights secured by any law** providing for the equal civil rights of citizens of the United States . . ." *[Emphasis added]*

### XIII.  Privileges and Immunities of the several States

a.  In *Maxwell v. Dow*, 176 U.S. 581, 587-590 (1900) citing *Slaughter-House Cases*, 83 U.S. 36, 75-78 (1872) where Justice Miller did explicate the differences between the privileges and immunities of the several States and of the privileges and immunities of the citizens of the United States which *Slaughter-House Cases, supra.* has not been overturned and only some negative history concerning applications to "persons" as in 28 U.S.C. § 1983, which has no application to the on point explication of *Slaughter-House Cases ibid* in *Maxwell ibid 587-590*.

b.  In *Maxwell at 593* Justice Peckham for the Court states that "[T]he protection of the citizen in his rights a citizen of the state still remains with the state."  Continuing on in *Maxwell at 593* the principle of *U.S. v. Cruikshank*, 92 U.S. 542, to wit:

> [W]herein it is said that sovereignty, for the protection of the rights of life and personal liberty within the respective states, rests alone with the states. But if all these rights are included in the phrase 'privileges and immunities' of citizens of the United States, which the states by reason of the Fourteenth Amendment cannot in any manner abridge, then the sovereignty of the state in regard to them has been entirely destroyed, and the Slaughter-House Cases and United States v. Cruikshank are all wrong, and should be overruled. *[Emphasis added]*

c.  The *Slaughter-House Cases* and *U.S. v. Cruikshank* have never been overturned.

d.  And further, Justice Miller in the *Slaughter-House Cases*, 83 U.S. 36, 75 (1872) "They are, in the language of Judge Washington, **those rights which the fundamental**. Throughout his opinion, they are spoken of as rights belonging to the individual as a citizen of a State. They are so spoken of in the constitutional provision, which he was construing. **And they**

**have always been held to be the class of rights which the State governments were created to**

**establish and secure."** *[Emphasis added]*

    **e.** In *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823), a case the Supreme Court of the

United States has described as, "the first, and long, leading explication of the [Privileges and

Immunities] Clause," see *Austin v. New Hampshire*, 420 U.S. 656, 661 (1975), Mr. Justice

Washington, sitting as Circuit Justice declared the following on Article IV, Section 2 on the

Privileges and Immunities of the several States, to wit:

> The inquiry is, what are the privileges and immunities of citizens in the several states? We feel no
> hesitation in confining these expressions to those **privileges and immunities which are, in their**
> **nature, fundamental; which belong, of right, to the citizens of all free governments; and**
> **which have, at all times, been enjoyed by the citizens of the several States which compose**
> **this Union, from the time of their becoming free, independent, and sovereign.** What these
> fundamental principles are, it would perhaps be more tedious than difficult to enumerate. They
> may, however, be all comprehended under the following general heads: **Protection by the**
> **government; the enjoyment of life and liberty, with the right to acquire and possess property**
> **of every kind, *552 and to pursue and obtain happiness and safety; subject nevertheless to**
> **such restraints as the government may justly prescribe for the general good of the whole.**
> **The right of a citizen of one state to pass through, or to reside in any other state, for**
> **purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the**
> **writ of habeas corpus; to institute and maintain actions of any kind in the courts of the state;**
> **to take, hold and dispose of property, either real or personal; and an exemption from higher**
> **taxes or impositions than are paid by the other citizens of the state; may be mentioned as**
> **some of the particular privileges and immunities of citizens, which are clearly embraced by**
> **the general description of privileges deemed to be fundamental: to which may be added, the**
> **elective franchise, as regulated and established by the laws or constitution of the state in**
> **which it is to be exercised.** These, and many others which might be mentioned, are, strictly
> speaking, privileges and immunities, and the enjoyment of them by the citizens of each state, in
> every other state, was manifestly calculated (to use the expressions of the preamble of the
> corresponding provision in the old articles of confederation) 'the better to secure and perpetuate
> mutual friendship and intercourse among the people of the different states of the Union.'

    **f.** Citing *Corfield, ibid,* see *Slaughter-House* Cases, 83 U.S. 36, 75, 76 (1872); *U.S. v.*

*Wheeler*, 254 U.S. 281, 296, 297 (1920); Baldwin *v. Fish and Game Commission of Montana*

436 U.S. 371, 384, 383 (1978).

    **g.** In *Maxwell at 587-590* the *Slaughter-House Cases* are examined in length with

*Maxwell* supporting *Slaughter-House Cases* in that the citizen of the several States are distinct

and different from a citizen of the United States; and, that the security were not intended any

additional protection by the 14th Amendment paragraph to the citizens of the several States; and, that the security and protection of the citizens of the several States still rests in the several States; and, that the 14th Amendment only enforces the equal protection of all within the several States; and, and if the 14th Amendment did subject the state governments of the several States to the will of Congress, it would fetter and degrade the state governments to the censoring of Congress, departing from the structure and spirit of our institutions; and, is convinced that no change in the privileges and immunities residing in the several States has changed.

### XIV.  Property is within the several States

a.  The Petitioner's property, which includes money, is within the locality, *Balzac* and *In re Guantanamo Detainee Cases*, *supra.*, and jurisdiction of one of the several States as a citizen of one of the several States under the Privileges and Immunities of the several States. This fundamental right of property is so important to the personal liberty of all people and stated with great specificity and clarity in *Coppage v. State of Kansas*, 236 U.S. 1, 14 (1915), to wit:

> The principle is fundamental and vital.  Included in the right of personal liberty and the right of private property-partaking of the nature of each-is the right to make contracts for the acquisition of property.  Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property.  If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense.  The right is as essential to the laborer as to the capitalist, to the poor as to the rich; for the vast majority of persons have no other honest way to begin to acquire property, save by working for money.

> An interference with this liberty so serious as that now under consideration, and so disturbing of equality of right, must be deemed to be arbitrary, unless it be supportable as a reasonable exercise of the police power of the state.

### XV.  Naturalization only Power Granted to Congress on citizenship

a.  There is only one legislative Power granted to Congress arising under the Constitution of the United States on citizenship and it is posited in Article I Section 8 Clause 4 "To establish an uniform Rule of Naturalization."  Congress has no legislative Power to diminish, expand, or regulate citizenship, including by the Fourteenth Amendment.

b. The legislative Power of Congress on Naturalization is clearly delineated in *Osborn v. Bank of the United States*, 22 U.S. 738, 827 (1824), to wit:

> A naturalized citizen is indeed made a citizen under an act of Congress, but the act does not proceed to give, to regulate, or to prescribe his capacities. He becomes a member of the society, possessing all the rights of a native citizen, and standing, in the view of the constitution, on the footing of a native. *The constitution does not authorize Congress to enlarge or abridge those rights.* The simple power of the national Legislature, is to prescribe a uniform rule of naturalization, and the exercise of this power exhausts it, so far as respects the individual. The constitution then takes him up, and, among other rights, extends to him the capacity of suing in the Courts of the United States, precisely under the same circumstances under which a native might sue. He is *828 distinguishable in nothing from a native citizen, except so far as the constitution makes the distinction. The law makes none.

c. See also *United States v. Wong Kim Ark*, 169 U.S. 649, 703,704 (1898); *Schneider v. Rusk*, 377 U.S. 163, 166, 167 (1964); *Mackenzie v. Hare*, 239 U.S. 299, 31`0 (1915).

d. In *Afroyim v. Rusk*, 387 U.S. 253, 267, 268 (1967), which also cited *Osborn ibid at 827*, the Court held that the Fourteenth Amendment does protect *every citizen of this Nation* against a congressional forcible destruction of his citizenship, to wit:

> Citizenship is no light trifle *268 to be jeopardized any moment Congress decides to do so under the name of one of its general or implied grants of power. In some instances, loss of citizenship can mean that a man is left without the protection of citizenship in any country in the world--as a man without a country. Citizenship in this Nation is a part of a cooperative affair. Its citizenry is the country and the country is its citizenry. The very nature of our free government makes it completely incongruous to have a rule of law under which a group of citizens temporarily in office can deprive another group of citizens of their citizenship. We hold that the Fourteenth Amendment was designed to, and does, protect every citizen of this Nation against a congressional forcible destruction of his citizenship, whatever his creed, color, or race. Our holding does no more than to give to this citizen that which is his own, a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship.

e. In *Smith v. Turner*, 48 U.S. 283, 394 (1849) "It is admitted that, in regard to the commercial, as to other powers, the States cannot be held to have parted with any of the attributes of sovereignty which are not plainly vested in the Federal government and inhibited to the States, either expressly or by necessary implication. This implication may arise from the nature of the power" with Naturalization being one the only Power authorized to Congress concerning citizenship.

**XVI. Citizen of the United States is primary citizenship and State citizenship is secondary**

a. The inherent and unalienable rights of the people with their primary citizen status has always been secured in the *original* States and in the several States long before the United States was established. The created entity of the United States can not rise above it's creators, being the people of *original* States and now the people of the several States.

b. There have been feeble attempts to encourage the primary citizen status as citizens of the United States as found in two *dissenting opinions* in *Slaughter-House Cases*, 83 U.S. 36, 112, 113 (1872), Justice Bradley *in dissenting opinion* stated which is cited in the *dissenting opinion* of Justice Field in *U.S. v. Wong Kim Ark.*, 169 U.S. 649, 677, 678 (1898) also in to wit:

> The question is now settled by the fourteenth amendment itself, that citizenship of the United States is the primary citizenship in this country; and that State citizenship is secondary and derivative, depending upon citizenship of the United States and the citizen's place of residence.

c. But of course, the privileges and immunities of the several States secured in the Constitution remain unaltered. And further, if a "citizen of the United States" was in fact the primary citizen status of our constitutional Republic, with Congress' only granted legislative Power on Naturalization arising under Article I Section 8 Clause 4 , the new members to our Republic would be a "citizen of the United States" and not a "citizen of the United States of America."

d. And further, Congress would enter their constitutional Offices as a "citizen of the United States", but they enter said Offices as "citizens of the United States of America."

e. Another major problem would be that the "executive Power is vested a President of the United States of America" arising under Article II section 1 clause 1 and not in the President of the United States.

### XVII.  Citizen of the United States and Social Security

a.  Petitioner does not claim as his ***primary citizen status to be a citizen of the United States!*** Petitioner would only use the national citizen status of a "citizen of the United States" ***after*** the ***primary status of a citizen of one of the several States*** for the privileges and immunities of the status of being a "citizen of the United States." Petitioner is not an individual or a "citizen of the United States" as used by Congress in 5 U.S.C. § 552 or under the Social Security Act (49 Stat 620 as amended) wherein Petitioner would have relinquished his constitutionally secured Rights for possible gratuities or benefits, or under the same status as declared by Congress to Indians in 25 U.S.C. §§ 1401, 1404 as "citizens of the United States" that are ***outside of the secured Rights of the people of the United States secured in the Constitution of the United States and constitutions of the several States.*** .  See  42 U.S.C. § 405(g-h);  *United States v. Babcock*, 250 U.S. 328, 331 (1919);  *Dismuke v. United States*, 297 U.S. 167, 171-172 (1936);  *Fleming v.* Nestor, 363 U.S. 603, 609-612 (1960);  *Hayburn's Case*, 2 Dall. 409, 409-411 (1792);  *United States v. Ferreira*, 13 How. 40, 48-50 (1851);  *Muskrat v. United States*, 219 U.S. 346, 352-362 (1911).

b.  Petitioner is an "American citizen"  having the right of Election and this was firmly established that said status attached for those who were *post natus* of the Declaration of Independence of July 4, 1776.  See *Inglis v. The Trustees of the Sailor's Snug Harbour of the city of New York*, 28 U.S. 99, 9, 16-18, 25, 40, **42-43** (1830).  It is not, nor can it be disputed that the Petitioner is Natural born citizen and American citizen.

c.  Petitioner is "citizen of the United States of America" and this status attaches to any man or woman that is Native Born or is Naturalized.  Naturalization is the ***only Power*** granted to Congress concerning any type of citizenship arising under the "Constitution of the United States"

and this is evidenced today and codified in 8 U.S.C. § 1449 by "was entitled to be admitted a *citizen of the United States of America*, thereupon ordered that the applicant to be admitted as a citizen of the United States of America." *[Emphasis added]* The status of being an American citizen and a "citizen of the United States of America" is also evidenced by 1 Stat 477.

d. All of the members of the jury and voters in Alaska are "citizens of the United States" and "residents of Alaska" and not "citizens of Alaska" and this is evidenced by ©AS 09.20.010 and ©AS 15.05.010 respectively. This is exactly the same citizenship and residency status as under the Territory of Alaska found in *Anderson v. Scholes*, 83 F.Supp 681, 687 (DC Territory of Alaska 1949).

e. Indian and Alaska Natives are also "citizens of the United States" and residents therein with SSNs. See 8 U.S.C. § 1401 & 1404 with a constitution, i.e. Bill of Rights, enacted by Congress in 25 U.S.C. § 1302. Pray tell how can the Petitioner be a "citizen of the United States" as his *primary citizen status* and a citizen of one of the several States with inalienable rights secured in the Constitution of the United States and a constitution of any of the several States be on an equal footing with an Indian or Alaska Native that is a "citizen of the United States" as his *primary citizen status* and resident of Alaska that is under the plenary power of Congress? See *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 57 (1978). The answer of course is that a "citizen of the United States" with the Social Security Number attached has no constitutionally secured rights.

f. In the adjudged decision of the *United States v. Cruikshank*, 92 U.S. 542, 554 (1875) the fourteenth amendment secures "the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." As Petitioner each owes allegiance to two sovereignties, one being the citizen of any of the

several States as ***primary citizen status***, and only a "citizen of the United States" for issues of national concern, and Petitioner can claim the protections of both citizenships within its respective jurisdiction, *id* at 550, 551.  And further, the United States has no voters of it's own, *id* at 555.

> The unalienable rights of Petitioner and the Sovereignty and duty for the protection of same, rests alone with any of the several States for it's citizens, and this still remains unaltered by the addition of the Fourteenth Amendment for "citizens of the United States" (national citizenship) as held in the adjudged decision of *Cruikshank, id* at 553, 554 and 555

g.    The citizens of the United States of America that ordained and established the government of the United States defined its powers by a Constitution.  The government created consisted of a political system that was twofold, a government of each of the several States with limited delegation of Power and then a grant of this limited delegation of Power to a government of the United States.  The independent governments of the several States brought forth privileges and immunities from the Articles of Confederation for the complete protections of their citizens, *United States v. Cruikshank*, 92 U.S. 542, 549-550 (1875).  It is "the very highest duty of the States" to protect all persons within their boundaries in their enjoyment of the unalienable rights as "*Sovereignty*, for this purpose, *rests alone with the States*." *Ibid,* 553.  "The right to vote in the States comes from the States," *Id.* 555, and this is the primary reason that the citizen of one of the several States, and not the United States, shall always exist under the guaranteed "Republican Form of Government" as found in the Constitution's Article IV, section 4.

h.    A citizen's allegiance "is a political obligation" that depends on the enjoyment of the protection of government and not on ownership of land within one of the several states of the union of the United States. See *Wallace v. Harmstad*, 44 Pa. 492.  Allegiance "binds the citizen to the observance of all laws" of his own sovereign, see *Adams v. People*, 1 N.Y. 173, and may be an absolute and permanent obligation or a qualified and temporary one.  The doctrine of

allegiance "rests on the ground of a mutual compact between the government and the citizen, which it is said cannot be dissolved by either party without the concurrence of the other. It is the tie which binds the governed to the government, in return for the protection which the government affords them," see *Inglis v. The Trustees of the Sailor's Snug Harbour in the city of New York*, 28 U.S. 99, 118 (1830). "The doctrines of allegiance must be looked for in the law of the state that has jurisdiction of the soil," see *Inglis* at 125. "Allegiance may be dissolved only by *mutual consent* of the government and its citizens" at *id* 118. Petitioner has NOT attempted to release by any act the renouncement of his citizenship the elective choice of a citizen of one of the several States for the exclusive status and primary citizen status to being a "citizen of the United States" as a *primary citizen status*. It does not follow that a government can compulsively oblige the Petitioner to renounce his allegiance to his birthright to claim only the citizenship of a national government when he was born as a citizen to two sovereign governments, one of the several States and of the Nation. A citizen must, by some act, distinctly and knowingly renounce his allegiance in order to divest himself of citizenship. See *Carlisle v. U.S.*, 83 U.S. 154, 154 (1872). Petitioner does not, will not and has not divested his allegiance to citizenship of one of the several States. Even if it could be declared that no citizen of one of the several States exists today, the sovereign state government has not noticed the Petitioner that it has dissolved or abolished such citizenship. There has been no mutual consent for the act to occur and therefore it must stand that the sovereign state citizenship does exist.

## XVIII

a.    **Eric Smith** ("Smith") is a "citizen of the United States" with a Social Security Number ("SSN") and a resident of Alaska.

b.    Smith as evidenced by **Attachment 01**, is a member of the Alaska Bar Association

(Alaska Bar Number 8211149) by said Attorney Oath ("Smith Attorney Oath")**;** and,

      c.      Smith is bound by the Judicial Code of Alaska as the "arbiter of the facts and law" (preamble); and,

      d.      Smith as evidenced by **Attachment 02**, is bound by the Code of Professional Conduct by and through Alaska Rule 64 Affidavit (" Smith's Rule 64 Affidavit"); and,

      e.      Smith as evidenced by **Attachment 03,** is bound by Cooperative Agreements of the Alaska Court System ("Court Cooperative Agreement ; and,

      f.      Smith as evidenced by **Attachment 03,** is bound by all regulations of the federal and state agencies that exercise no executive Power of the Constitution or the Constitution of the State of Alaska; and,

      g.      Smith has a pecuniary interest in Cases and this instant Case by and though the Cooperative Agreements of the Alaska Court System, being **Attachment 03**, and the State Plan including IV-D of the Social Security Act; and,

      h.      Smith has no Office arising under any of the several States with duties and powers; and,

      i.      Smith as evidenced by **Attachment 04**, has no Civil Commission under the Signature of any Governor of one of the several States under the Seal of the Secretary of any of the several States ("Smith Appointment Letter") , and as evidenced by **Attachment 05**, as an example of a real Civil Commission ("Civil Commission of Rabinowitz"); and,

      j.      Smith as evidenced by **Attachment 06**, has no Oath of Office to the "Constitution of the United States" as a public Officer (judicial Officer, i.e. Judge) ("Smith Fiat Oath") as required arising under Article VI of the Constitution; and,

k.      Smith as evidenced by **Attachment 06**, has no Oath of Office to the "Constitution of the United States" as a public Officer (judicial Officer, i.e. Judge) ("Smith Fiat Oath") , and  as evidenced by **Attachment 07**, as required under 1 Stat 23 ("1 Stat 23") to the "Constitution of the United States" and also the very first Law of the United States;  and,

l.      Smith has no Oath of Office as a public Officer as mandated under Article XII Section 5 of the Constitution of the State of Alaska (sic); and,

m.      Smith is a mere employee of the State of Alaska by and through an "Employee Affidavit"; and,

n.      Smith is impersonating a judicial Officer of Alaska, i.e. a public Officer of the State of Alaska; and,

o.      Smith is not an independent Judge as he is bound by cooperative agreements and by Alaska Bar Rule 9 to act in conformity with the standards imposed upon members of the Bar, which include but limited to Rules of Professional Conduct and the Code of Judicial Conduct that have been or may hereafter be adopted or recognized by the Court and the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar; and,

p.      Smith exercises no judicial Power of the State of Alaska; and,

q.      Smith is operating outside of the Constitution upon "citizens of the United States" with SSNs in which the United States has created rights in individuals against itself and Congress is under no obligation to provide a remedy though the Courts of the United States or Courts of the several States.

## XIX.

a.      **Kevin D. Williams** ("Williams") is a "citizen of the United States" with a SSN

and a resident of Alaska.

      b.      Williams, has not Attorney Oath on File at the Alaska Bar Association according to the personnel at the Alaska Bar Association, but he is a member of the Alaska Bar Association (Alaska Bar Number 9006041) in good standing, being "Williams' Attorney Oath"; and,

      c.      Williams is bound to submit to Smith under the Judicial Code of Alaska as the "arbiter of the facts and law" (preamble); and,

      d.      Williams as evidenced by which does exist and is not on file in the Alaska Bar Association, but he is bound by the Code of Professional Code of Conduct by and through Alaska Rule 64 Affidavit being "Williams' Rule 64 Affidavit; and,

      e.      Williams is bound by Alaska Bar Rule 9 to act in conformity with the standards imposed upon members of the Bar, which include but limited to Rules of Professional Conduct and the Code of Judicial Conduct that have been or may hereafter be adopted or recognized by the Court and the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar;

      f.      Williams is bound by Cooperative Agreements of the Alaska Department of Law, being **Attachment 9**; and,

      g.      Williams is bound by all regulations of the federal and state agencies that exercise no executive Power of the Constitution or the Constitution of the State of Alaska by and though cooperative agreements,

      h.      Williams has a pecuniary interest in Cases and this instant Case by and though cooperative agreements; and,

      i.      Williams has no Office arising under any of the several States with duties and

powers; and,

      j.      Williams has no Civil Commission under the Signature of any Governor of one of the several States under the Seal of the Secretary of any of the several States with a real Civil Commission, and as evidenced by **Attachment 5**, as an example of a real Civil Commission; and,

      k.      Williams has no Oath of Office as a public Officer (public Officer, i.e. executive Officer) as mandated under Article VI of the Constitution to the "Constitution of the United States"; and,

      l.      Williams has no Oath of Office as a public Officer (executive Officer), as evidenced by **Attachment 07**, as required under 1 Stat 23 ("1 Stat 23") to the "Constitution of the United States" and also the very first Law of the United States; and,

      m.      Williams has no Oath of Office as a public Officer as mandated under Article XII Section 5 of the Constitution of the State of Alaska (sic); and,

      n.      Williams is a mere employee of the State of Alaska by and through an "Employee Affidavit"; and,

      o.      Williams is impersonating a executive Officer of the State of Alaska, i.e. a public Officer of the State of Alaska; and,

      p.      Williams exercises no executive Power of the State of Alaska; and,

      q.      Williams is operating outside of the Constitution upon "citizens of the United States" with SSNs in which the United States has created rights in individuals against itself and Congress is under no obligation to provide a remedy though the Courts of the United States or Courts of the several States.

**XX.**

a.　　**Rachel King** ("King") ") is a "citizen of the United States" with a SSN and a resident of Alaska.

b.　　King is bound by Cooperative Agreements under Alaska Child Support Services Division ("CSSD") of which there are many; and,

c.　　King is bound by all regulations of the federal and state agencies that exercise no executive Power of the Constitution or the Constitution of the State of Alaska by and though cooperative agreements and the State Plan; and,

d.　　King has a pecuniary interest in Cases and this instant Case by and though the cooperative agreements and the State Plan; and,

e.　　King has no Office arising under the several States with duties and powers; and,

f.　　King has no Civil Commission under the Signature of any Governor of one of the several States under the Seal of the Secretary of any of the several States, and as evidenced by **Attachment 5**, as an example of a real Civil Commission; and,

g.　　King has no Oath of Office as a public Officer (executive Officer) as mandated under Article VI of the Constitution to the "Constitution of the United States"; and,

h.　　King has no Oath of Office as a public Officer (executive Officer) as evidenced by **Attachment 07**, as required under 1 Stat 23 ("1 Stat 23") to the "Constitution of the United States" and also the very first Law of the United States;  and,

i.　　King has no Oath of Office as a public Officer as mandated under Article XII Section 5 of the Constitution of the State of Alaska (sic); and,

j.　　King is a mere employee of the State of Alaska by and through an "Employee Affidavit"; and,

k.      King is impersonating a executive Officer of the State of Alaska, i.e. a public Officer of the State of Alaska; and,

l.      King exercises no executive Power of the State of Alaska; and,

m.      King is operating outside of the Constitution upon "citizens of the United States" with SSNs in which the United States has created rights in individuals against itself and Congress is under no obligation to provide a remedy though the Courts of the United States or Courts of the several States.

n.      King uses the services of the Attorneys of the Department of Law by and though cooperative agreements and therefore by and through said cooperative agreements to assist King and represent same, King uses Attorneys that are bound by Alaska Bar Rule 9 to act in conformity with the standards imposed upon members of the Bar, which include but limited to Rules of Professional Conduct and the Code of Judicial Conduct that have been or may hereafter be adopted or recognized by the Court and the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar.

## XXI.

a.      **Richard Romero** ("Romero") ") is a "citizen of the United States" with a SSN and a resident of Alaska.

b.      Romero is bound by Cooperative Agreements under Alaska Child Support Services Division ("CSSD") of which there are many; and,

c.      Romero is bound by all regulations of the federal and state agencies that exercise no executive Power of the Constitution or the Constitution of the State of Alaska by and though cooperative agreements and the State Plan; and,

d.      Romero has a pecuniary interest in Cases and this instant Case by and though the cooperative agreements and the State Plan; and,

e.      Romero has no Office arising under the several States with duties and powers; and,

f.      Romero has no Civil Commission under the Signature of any Governor of one of the several States under the Seal of the Secretary of any of the several States, and as evidenced by **Attachment 5**, as an example of a real Civil Commission; and,

g.      Romero has no Oath of Office as a public Officer (executive Officer) as mandated under Article VI of the Constitution to the "Constitution of the United States"; and,

h.      Romero has no Oath of Office as a public Officer (executive Officer) as evidenced by **Attachment 07**, as required under 1 Stat 23 ("1 Stat 23") to the "Constitution of the United States" and also the very first Law of the United States; and,

i.      Romero has no Oath of Office as a public Officer as mandated under Article XII Section 5 of the Constitution of the State of Alaska (sic); and,

j.      Romero is a mere employee of the State of Alaska by and through an "Employee Affidavit"; and,

k.      Romero is impersonating a executive Officer of the State of Alaska, i.e. a public Officer of the State of Alaska; and,

l.      Romero exercises no executive Power of the State of Alaska; and,

m.      Romero  is operating outside of the Constitution upon "citizens of the United States" with Social Security Numbers ("SSN") in which the United States has created rights in individuals against itself and Congress is under no obligation to provide a remedy though the

Courts of the United States or Courts of the several States.

      n.      Romero uses the services of the Attorneys of the Department of Law by and though cooperative agreements and therefore by and through said cooperative agreements to assist Romero and represent same, Romero uses Attorneys that are bound by Alaska Bar Rule 9 to act in conformity with the standards imposed upon members of the Bar, which include but limited to Rules of Professional Conduct and the Code of Judicial Conduct that have been or may hereafter be adopted or recognized by the Court and the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar.

## XXII.

      a.      **Ray A. Hollenbeck** ("Hollenbeck") is a "citizen of the United States" with a SSN and a resident of Alaska.

      b.      Hollenbeck is bound by Cooperative Agreements under Alaska Child Support Services Division ("CSSD") of which there are many; and,

      c.      Hollenbeck is bound by all regulations of the federal and state agencies that exercise no executive Power of the Constitution or the Constitution of the State of Alaska by and though cooperative agreements and the State Plan; and,

      d.      Hollenbeck has a pecuniary interest in Cases and this instant Case by and though the cooperative agreements and the State Plan; and,

      e.      Hollenbeck has no Office arising under the several States with duties and powers; and,

      f.      Hollenbeck has no Civil Commission under the Signature of any Governor of one of the several States under the Seal of the Secretary of any of the several States, and as evidenced

by **Attachment 5**, as an example of a real Civil Commission; and,

g.    Hollenbeck has no Oath of Office as a public Officer (executive Officer) as mandated under Article VI of the Constitution to the "Constitution of the United States"; and,

h.    Hollenbeck has no Oath of Office as a public Officer (executive Officer) as evidenced by **Attachment 7**, as required under 1 Stat 23 ("1 Stat 23") to the "Constitution of the United States" and also the very first Law of the United States;  and,

i.    Hollenbeck has no Oath of Office as a public Officer as mandated under Article XII Section 5 of the Constitution of the State of Alaska (sic); and,

j.    Hollenbeck is a mere employee of the State of Alaska by and through an "Employee Affidavit"; and,

k.    Hollenbeck is impersonating a executive Officer of the State of Alaska, i.e. a public Officer of the State of Alaska; and,

l.    Hollenbeck exercises no executive Power of the State of Alaska; and,

m.    Hollenbeck  is operating outside of the Constitution upon "citizens of the United States" with Social Security Numbers ("SSN") in which the United States has created rights in individuals against itself and Congress is under no obligation to provide a remedy though the Courts of the United States or Courts of the several States.

n.    Hollenbeck uses the services of the Attorneys of the Department of Law by and though cooperative agreements and therefore by and through said cooperative agreements to assist Hollenbeck and represent same, Hollenbeck uses Attorneys that are bound by Alaska Bar Rule 9 to act in conformity with the standards imposed upon members of the Bar, which include but limited to Rules of Professional Conduct and the Code of Judicial Conduct that have been or

may hereafter be adopted or recognized by the Court and the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar.

## XXIII.

a. **Crystal Dawn Langham** ("Langham") is a "citizen of the United States" with a SSN and a resident of Alaska.

b. Langham as a "citizen of the United States, she is bound by Cooperative Agreements under Alaska Child Support Services Division ("CSSD"); and,

c. Langham is bound by all regulations of the federal and state agencies that exercise no executive Power of the Constitution or the Constitution of the State of Alaska, has a pecuniary interest in this instant Case; and,

d. Langham is using the "Administrative State" to Langham's advantage with mere Employees that have no Office arising under the several States with duties and powers; and,

e. Langham is using the "Administrative State" to Langham's advantage with mere Employees that have no Civil Commission under the Signature of any Governor of one of the several States under the Seal of the Secretary of any of the several States; and,

f. Langham is using the "Administrative State" to Langham's advantage with mere Employees that have no Oath of Office as a public Officer (executive Officer and judicial Officers (Judges)) as mandated under Article VI of the Constitution to the "Constitution of the United States"; and,

g. Langham is using the "Administrative State" to Langham's advantage with mere Employees that have no Oath of Office as a public Officer (executive Officers and judicial Officers) as mandated under 1 Stat 23 to the "Constitution of the United States"; and,

h. Langham is using the "Administrative State" to Langham's advantage with mere Employees that have no Oath of Office as a public Officer as mandated under Article XII Section 5 of the Constitution of the State of Alaska (sic); and,

i. Langham is using the "Administrative State" to Langham's advantage with mere Employees that are an employee of the State of Alaska by and through an "Employee Affidavit"; and,

j. Langham is using the "Administrative State" to Langham's advantage with mere Employees that are impersonating a executive Officers and judicial Officers of State of Alaska, i.e. a public Officers of the State of Alaska; and,

k. Langham is using the "Administrative State" to Langham's advantage with mere Employees that exercises no executive Power or judicial Power of the State of Alaska; and

l. Langham is using the "Administrative State" to Langham's advantage with mere Employees that are operating outside of the Constitution upon "citizens of the United States" with Social Security Numbers ("SSN") in which the United States has created rights in individuals against itself and Congress is under no obligation to provide a remedy though the Courts of the United States or Courts of the several States.

## XXIV.  Summary of Case

a. Smith exercises no judicial Power of any of the several States, he is impersonating a public Officer of the State of Alaska with no Office established under any constitution of any the several States, he has no Oath of Office as a public Officer i.e. judicial Officer to the "Constitution of the United States", he is not an independent Judge, he is a mere employee of the State of Alaska, he is bound by Cooperative Agreements for a pecuniary result for the Alaska

Court System, he is bound by the State Plan of the Social Security System, CSSD and other agencies of the State of Alaska, he has a pecuniary interest in this instant Case, is bound by the Alaska Bar Association, he is bound by all regulations of CSSD that have no executive Power and the Social Security Act as amended with requisite regulations, he has intentionally, unlawfully, illegally, and willfully has imposed a retroactive modification on child support to punish and frustrate Clugston and he is implementing and enforcing a Bill of Attainder against Clugston.

b.  Williams, King, Hollenbeck, and Romero exercise no executive Power of any of the several States, they are impersonating a public Officers of the State of Alaska with no Office established under any constitution of any the several States, they have no Oath of Office as a public Officer i.e. executive Officer to the "Constitution of the United States", they are mere employees of the State of Alaska, they are bound by Cooperative Agreements for a pecuniary result for the Alaska Court System and the State Plan of the Social Security System, CSSD and other agencies of the State of Alaska, each of them has a pecuniary interest in this instant Case, each of them are bound by all regulations of CSSD that has no executive Power and the Social Security Act as amended with requisite regulations, and they are implementing and enforcing a Bill of Attainder against Clugston.

c.  Langham is using these unlawful acts of Smith, Williams, King, Hollenbeck, and Romero to obtain financial gain unjustly.  Langham is underemployed to qualify for the monies being extracted from Clugston for her financial gain under the guise of child custody for the benefit of Nicholas.

d.  Smith, Williams, King, Romero, Hollenbeck, and Langham are using the "citizen of the United States" status and Social Security Act of 49 Stat 620 as amended with Cooperative

Agreements in which if you have accepted the possibility of a benefit or gratuity you have no constitutionally secured rights and Congress along with the State can withhold all remedies and deny Clugston Due Process of Law.   Clugston has been banished and effectively denaturalized, and all of the parties are involved in implementing and benefiting financially using the Bills of Attainder of Congress and the State of Alaska.

e.  All parties have unlawfully and illegally determined that Clugston is a "noncustodial parent", i.e. "obligor" when each of the parties have a pecuniary interest in this Case when in fact Langham and Clugston have *share physical custody* and *joint legal custody*.   All of the parties have unlawfully and illegally contributed to Smith's prohibited retroactively increasing the child support for Nicholas in violation of the regulations of the "Administrative State."

## XXV.  Fact Summary

a.  Because of the intrusive nature of "NOTICE OF PETITION FOR MODIFICATION OF ADMINISTRATIVE SUPPORT ORDER" of January 4, 2001, Clugston and Langham had a meeting of the minds and entered into a Contract between the two of them ("Contract") on April 24th, 2001 after filing for withdrawal of services from Alaska Child Support Services Division (old "Child Support Enforcement Division" -- "CSED", but hereafter "CSSD").   Zabrina Russel ("Russel"), who purports to be a "Child Support Specialist", as evidenced by **Attachment 08**, Russel confirms receipt of the Contract by a letter dated April 24, 2001 under her name ("Contract Confirmation by Russel").

b.  As evidence by **Attachment 09**, on April 24, 2001, a Notice of Termination of Orders/Notice ("Notice of Termination") was sent out under the signature and purported authority of Darrell J. Watson ("Watson") to all interested parties to terminal all existing

Administrative Withholding Orders concerning Clugston.

## XXVI.

a. Because of my concern for the welfare of our child, being Nicholas Lee Langham ("Nicholas"), Clugston filed for full custody of Nicholas on or about October 27, 2003, without my knowledge or consent October 27, 2003, as evidenced by **Attachment 10**, Langham vindictively made application for support services with CSSD ("Application for Support Services"). This was a unilateral termination of the Contract in which Clugston didn't even obtain notice of until December 2, 2003. This was also a unilateral attempt by Langham to obligate Clugston to the State of Alaska for payment of money for her application for public assistance.

## XXVII.

a. As evidenced by **Attachment 10**, Clugston received a Letter of Introduction from CSSD dated December 2, 2003 that Langham had unilaterally assigned to Clugston the status of "noncustodial parent", and that a current payment of $411.00 would be required of Clugston retroactive back to April 1, 2001. Under the signature a C. Barnhart, purportedly a Accounting Tech II, as evidenced by **Attachment 10**, ("Arrears") as of January 28, 2004 was calculated by CSSD to be $7,926.48 with interest of $632.43 for a total of $8,558.91.

## XXVIII.

a. Clugston was in court on the custody of Nicholas Case 3PA-03-1454 CI with Smith acting as a Judge. The result of this Case was where as evidenced by **Attachment 11**, Williams states in his "OPPOSITION TO MOTION FOR RECONSIDERATION" dated June 15, 2004 ("Contract Opposition"), that Rule 90.3 prohibits entering into the Contract in opposition to

Watson's earlier administrative Notice of Termination and this was upheld as evidence by **Attachment 12,** where Smith in an Final ORDER ("Smith Final Order") invalidated an administrative determination on June 16, 2004.

### XXIX.

a.  As evidenced by **Attachment 13**, an "Assertion of Lien for Child Support (AS 25.27.230)" ("Lien"), by a Ray A Hollenbeck ("Hollenbeck") purportedly a Child Support Specialist, was filed in the Palmer Recording District on August 18, 2004, to which Clugston  not given notice until January of 2005, approximately six (6) months later.

### XXX.

a.  Smith unlawfully denied the Contract between Clugston and Langham. As evidenced by **Attachment 14**, Smith then entered a Decree on September 9, 2004 ("Decree") that Clugston would have *shared physical custody* and *joint legal custody* of Nicholas with Langham.

### XXXI.

a.  As evidenced by **Attachment 15**, Smith issued a Child Support Order October 19, 2004 ("First Child Support Order"), that had been submitted to Smith by Candice Bales ("Bales") by the then attorney for Clugston for a final determination without Clugston's knowledge or approval, of which Bales was in violation of the Rules of Professional Conduct 1.2(a) for the settlement of a matter *without Clugston's knowledge or approval*.  In the First Child Support Order, the "Obligor" was left blank and therefore had not been determined.  This First Child Support Order was signed by Smith as a valid Order, to which CSSD preceded forward taking Clugston's money (property) and filed a Lien against all of Clugston's property with the status of a "noncustodial parent" and "obligor."

## XXXII.

a.  Candice Bales withdrew from representing Clugston on November 3, 2004.

## XXXIII.

a.  As evidenced by **Attachment 16**, Clugston Demanded an Administrative Review November 30, 2004 with the Statutes and Regulations in support ("Demand for Administrative Review"). As evidenced by **Attachment 17**, King responded with a letter dated December 20, 2004 ("King Letter"), addressing none of the issues put forward by Clugston and by King's *ipse dixit* determination that Clugston was a "noncustodial parent."

## XXXIV.

a.  As evidenced by **Attachment 18**, A "Notice to Noncustodial Parent – Enforcement of Health Care Withholding" ("Enforcement of Health Care") dated May 11, 2005, with Clugston being a "noncustodial parent" under the name of King was mailed to Clugston.

## XXXV.

a.  As evidenced by **Attachment 19**, a threatening letter ("Threatening Letter") dated June 22, 2005 from a James E Davis ("Davis") was received by Clugston stating that any occupational or driver's license might be suspended, as CSSD was reporting Clugston to licensing agencies within 60 days of said Threatening Letter was received by Clugston.

## XXXVI.

a.  As evidenced by **Attachment 20**, a "Demand for Delivery" of money, wages, deposits, or earnings ("Kanag'iq Letter") dated June 22, 2005 under the signature of a Romero, was send to Kanagi's Construction Co., Inc.

b. As evidenced by **Attachment 21**, a "Notice of Garnishment" dated June 23, 2005 was send to Clugston from King. As evidenced by **Attachment 22**, an "ORDER TO WITHHOLD PROPERTY FOR CHILD SUPPORT" ("Matanuska Valley Letter") dated June 23 was mailed to Matanuska Valley Federal Credit Union by Romero ordering them to withhold money, deposits, or balances of Clugston, being an "obligor." As evidenced by **Attachment 23**, an "ORDER TO WITHHOLD PROPERTY FOR CHILD SUPPORT" ("Wells Fargo Letter") dated June 23, was mailed to Well Fargo Bank, N.A. by Romero ordering them to withhold money, deposits, or balances of Clugston, being an "obligor."

## XXXVII.

a. As evidenced by **Attachment 24**, a "Notice to Noncustodial Parent – Enforcement of Health Care Withholding" ("Enforcement of Health Care") dated August 11, 2005 with Clugston being a "noncustodial parent" under the name of Kimberly K Hunter ("Hunter") was mailed to Clugston.

## XXXVIII.

a. On December 16, 2005, Langham motioned the "Superior Court for the State of Alaska" ("Superior Court") for a retroactive modification of child support based on the opinion of the Supreme Court of Alaska, which provided no legal precedence of any type and was based upon the First Support Order with the "obligor" blank.

## XXXIX.

a. On December 20, 2005, Clugston Motioned the Superior Court for a clarification of facts and conclusions of law citing that a retroactive modification of child support was prohibited

by federal and state law.   Clugston further stated that the First Child Support Order was void the space for the "obligor" was blank.

## XXXX.

a.   As evidenced by **Attachment 25**, on January 24, 2006, a "Motion to Correct a Clerical Mistake" ("Clerical Mistake Motion") was entered by Williams for CSSD, noting that there was no law supporting whom would be the "obligator."   Williams also claims that he "contacted Candice Bales, the attorney who drafted the order, and learned that the obligor was most likely her client Leon Clugston."   Clugston contacted Bale's Office and talked to Marjorie Hubbard ("Hubbard"), Bale's Assistant.   Hubbard stated to Clugston on two conversations on the telephone on March 21, 2006 that it was strongly stated to Williams by Bales that she did not proffer Clugston as the "obligor" and Bales stated very clearly to Williams that Bales did not represent Clugston at this time or since Bales had withdrawn representation of Clugston on November 3, 2004.

## XXXXI.

a.   As evidenced by **Attachment 26**, on January 30, 2006, Clugston entered an Opposition to Williams' Clerical Mistake Motion ("Clugston Opposition to Williams' Clerical Mistake").   As evidenced by **Attachment 27**, a Reply ("Williams' Reply") from Williams on February 1, 2006 stated "***Although CSSD does not know who the obligor should be* . . .**" and further in said Reply Williams stated "***Putting all of this aside, there needs to be an obligor named within the support order.***"   On February 7, 2006, Clugston filed a Motion to Dismiss with prejudice and Williams entered an Opposition on February 21, 2006 Clugston's Motion to Dismiss.   On February 24, 2006, Clugston entered a Reply to Williams' Opposition and on

March 3, 2206, Clugston amended the Motion to Dismiss with prejudice.

### XXXXII.

a. As evidenced by **Attachment 28**, an unsigned letter received by Clugston from CSSD dated February 16, 2006 stating that it had been determined that $6,634.00 was owed by Clugston and that that the United States Department of Treasury ("Treasury Letter"), would be involved in the collection of said support monies.

### XXXXIII.

a. As evidenced by **Attachment 29**, on March 13, 2006, Smith entered an Amended Order for Child Support ("Second Child Support Order"), stating that Clugston was the "obligor" and also, entered in said Second Child Support Order retroactively declaring child support at a higher rate to September 1, 2004. *Missing* in the Second Child Support Order was the established fact by the Decree of September 9, 2004 that Clugston did have *joint legal custody* of Nicholas with Langham.

### XXXXIV.

a. As evidenced by **Attachment 30**, Senator Ted Stevens ("Stevens Letter") responded to a Letter from Clugston stating that "They [Alaska Child Support Services] are enforcing a standing court order and suggest that if you wish to amend this order you hire an attorney and return to court to seek a modification of the order."

### Summary of Attachments

**Attachments**

**Attachment 01**, is a member of the Alaska Bar Association (Alaska Bar Number 8211149) by said Attorney Oath ("Smith Attorney Oath") ......................................................................19

**Attachment 02**, is bound by the Code of Professional Conduct by and through Alaska Rule 64 Affidavit (" Smith's Rule 64 Affidavit").............................................................................19

**Attachment 03,** is bound by Cooperative Agreements of the Alaska Court System ("Court Cooperative Agreement.............................................................................................19

**Attachment 04**, has no Civil Commission under the Signature of any Governor of one of the several States under the Seal of the Secretary of any of the several States ("Smith Appointment Letter") ..........................................................................................................................20

**Attachment 05**, as an example of a real Civil Commission ("Civil Commission of Rabinowitz") ....................................................................................................................................20

**Attachment 06**, has no Oath of Office to the "Constitution of the United States" as a public Officer (judicial Officer, i.e. Judge) ("Smith Fiat Oath")  as required arising under Article VI of the Constitution ....................................................................................................................20

**Attachment 07**, as required under 1 Stat 23 ("1 Stat 23") to the "Constitution of the United States" and also the very first Law of the United States..................................... 21, 25, 27

**Attachment 08**, Russel confirms receipt of the Contract by a letter dated April 24, 2001 under her name ("Contract Confirmation by Russel") ...................................................................33

**Attachment 09**, on April 24, 2001, a Notice of Termination of Orders/Notice ("Notice of Termination") was sent out under the signature and purported authority of Darrell J. Watson ("Watson") to all interested parties ...............................................................................33

**Attachment 10**, ("Arrears") as of January 28, 2004 was calculated by CSSD to be $7,926.48 with interest of $632.43 for a total of $8,558.91.............................................................34

**Attachment 10**, Langham vindictively made application for support services with CSSD ("Application for Support Services").  T.................................................................................34

**Attachment 11**, Williams states in his "OPPOSITION TO MOTION FOR RECONSIDERATION" dated June 15, 2004 ("Contract Opposition"), that Rule 90.3 prohibits entering into the Contract in opposition to Watson's earlier administrative Notice of Termination.............................................................................................................35

**Attachment 12**, where Smith in an Final ORDER ("Smith Final Order") invalidated an administrative determination on June 16, 2004. ...............................................................35

**Attachment 13**, an "Assertion of Lien for Child Support (AS 25.27.230)" ("Lien"), by a Ray A Hollenbeck ("Hollenbeck") purportedly a Child Support Specialist, was filed in the Palmer Recording District on August 18, 2004............................................................... 36, 80

**Attachment 14**, Smith then entered a Decree on September 9, 2004 ("Decree") that Clugston would have ***shared physical custody*** and ***joint legal custody*** of Nicholas with Langham.........36

**Attachment 15**, Smith issued a Child Support Order October 19, 2004 ("First Child Support Order"), that had been submitted to Smith by Candice Bales ("Bales").................................36

**Attachment 16**, Clugston Demanded an Administrative Review November 30, 2004 with the Statutes and Regulations in support ("Demand for Administrative Review").........................37

**Attachment 17**, King responded with a letter dated December 20, 2004 ("King Letter"), addressing none of the issues put forward by Clugston and by King's *ipse dixit* determination that Clugston was a "noncustodial parent." ..........................................................................37

**Attachment 18**, A "Notice to Noncustodial Parent – Enforcement of Health Care Withholding" ("Enforcement of Health Care") dated May 11, 2005, with Clugston being a "noncustodial parent" under the name of King was mailed to Clugston. .....................................................38

**Attachment 19**, a threatening letter ("Threatening Letter") dated June 22, 2005 from a James E Davis ("Davis") was received by Clugston stating that any occupational or driver's license might be suspended ...........................................................................................................38

**Attachment 20**, a "Demand for Delivery" of money, wages, deposits, or earnings ("Kanagi'q Letter") dated June 22, 2005 under the signature of a Romeo, was send to Kanagi's Construction Co., Inc. .......................................................................................................39

**Attachment 21**, a "Notice of Garnishment" dated June 23, 2005 was send to Clugston from King. ......................................................................................................................................39

**Attachment 22**, an "ORDER TO WITHHOLD PROPERTY FOR CHILD SUPPORT" ("Matanuska Valley Letter") dated June 23 was mailed to Matanuska Valley Federal Credit Union by Romero..................................................................................................................39

**Attachment 23**, an "ORDER TO WITHHOLD PROPERTY FOR CHILD SUPPORT" ("Wells Fargo Letter") dated June 23, was mailed to Well Fargo Bank, N.A. by Romero....................40

**Attachment 24**, a "Notice to Noncustodial Parent – Enforcement of Health Care Withholding" ("Enforcement of Health Care") dated August 11, 2005 with Clugston being a "noncustodial parent" under the name of Kimberly K Hunter ("Hunter")......................................................40

**Attachment 25**, on January 24, 2006, a "Motion to Correct a Clerical Mistake" ("Clerical Mistake Motion") was entered by Williams for CSSD, noting that there was no law supporting whom would be the "obligator." ...........................................................................41

**Attachment 26**, on January 30, 2006, Clugston entered an Opposition to Williams' Clerical Mistake Motion ("Clugston Opposition to Williams' Clerical Mistake").............................42

**Attachment 27**, a Reply ("Williams' Reply")  from Williams on February 1, 2006 stated "*Although CSSD does not know who the obligor should be . . .*" ........................................42

**Attachment 28**, an unsigned letter received by Clugston from CSSD dated February 16, 2006 stating that it had been determined that $6,634.00 was owed by Clugston and that that the United States Department of Treasury ("Treasury Letter"), would be involved in the collection of said support monies. ...........................................................................................42

**Attachment 29**, on March 13, 2006, Smith entered an Amended Order for Child Support ("Second Child Support Order"),..................................................................................................43

**Attachment 30**, Senator Ted Stevens ("Stevens Letter") responded to a Letter from Clugston .43

**Attachment 31**, being the State Plan of the State of Alaska "2.12 Procedures to Improve Program Effectiveness" authorized by 42 U.S.C. § 654(20) and 42 U.S.C. § 666(a)(16) to coerce Clugston to pay a debt..................................................................................................91

## Smith

### First Cause of Action

Clugston repleads paragraphs **I.** though **XXXXIV.**  The Plaintiff alleges that Smith has no

"Oath of Office" as a judicial Officer to support the "Constitution of the United States" in a public record as evidenced by **Attachment 6**, and is therefore in violation of Article VI of the Constitution and not a bona fide judicial Officer, i.e. public Officer of the State of Alaska.

### Second Cause of Action

Clugston repleads the First Cause of Action and alleges that Smith has no "Oath of Office" as a "judicial Officer" as evidenced by **Attachment 6** of one the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Third Cause of Action

Clugston repleads the Second Cause of Action and alleges that Smith has not sworn and subscribed to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record as evidenced by **Attachment 6**.

### Fourth Cause of Action

Clugston repleads the Third Cause of Action and alleges that Smith has no "Civil Commission" as evidenced by **Attachment 4** authorizing and empowering Smith to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the judicial Power of any one of the several States.

### Fifth Cause of Action

Clugston repleads the Fourth Cause of Action and alleges that Smith is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Sixth Cause of Action

Clugston repleads the Fifth Cause of Action and alleges that Smith has no authority of any of the several States as a "judicial Officer", and cannot exercise any "judicial Power" of any of the several States as a "judicial Officer" in this instant Case.

### Seventh Cause of Action

Clugston repleads the Sixth Cause of Action and alleges that Smith is not a "public Officer" in any of the several States.

### Eighth Cause of Action

Clugston repleads the Seventh Cause of Action and alleges that Smith with Alaska Bar Association ("Bar") number 8211149 in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules as evidenced by **Attachment 1** and **Attachment 2**.

### Ninth Cause of Action

Clugston repleads the Eighth Cause of Action and alleges that by Smith's OATH OF ATTORNEY (**Attachment 1**) in compliance with Alaska Bar Rule 5, by Smith's Rule 64 Affidavit (**Attachment 2**) and by the Alaska Bar Rule 9; therefore, Smith is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the

Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### Tenth Cause of Action

Clugston repleads the Ninth Cause of Action and alleges that Smith is not an "independent Judge" of any of the several States as he is bound by including, but limited to "cooperative agreements" of the Alaska Court System, Alaska Bar Rules, the Rules of Professional Conduct, and Judicial Code of Alaska.

### Eleventh Cause of Action

Clugston repleads the Tenth Cause of Action and alleges that Smith has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### Twelfth Cause of Action

Clugston repleads the Eleventh Cause of Action and Clugston alleges that on or about June 16, 2004 that Smith in the Smith Final Order, being **Attachment 12**, did unlawfully and illegally issue a final Order that the Contract between Langham and Clugston was void.

### Thirteenth Cause of Action

Clugston repleads the Twelfth Cause of Action and Clugston alleges that on or about September 9, 2004 that Smith in the Decree, being **Attachment 14**, did unlawfully and illegally issue a final Order that the Contract between Langham and Clugston was void.

### Fourteenth Cause of Action

Clugston repleads the Thirteenth Cause of Action and Clugston alleges that on or about

September 9, 2004 that Smith in the Decree, being **Attachment 14**, did establish that Langham and Clugston would have *shared physical custody* and *joint legal custody* of Nicholas.

### Fifteenth Cause of Action

Clugston repleads the Fourteenth Cause of Action and Clugston alleges that on or about October 19, 2004 that Smith did sign the First Child Support Order, being **Attachment 15** that did not specify any "obligor" and said space in the First Child Support Order was *blank*.

### Sixteenth Cause of Action

Clugston repleads the Fifteenth Cause of Action and Clugston alleges that as a result of Smith's unlawful and illegal First Child Support Order (**Attachment 15**), Clugston had money, which is property, taken in amount of approximately $6,000.00.

### Seventeenth Cause of Action

Clugston repleads the Sixteenth Cause of Action and Clugston alleges that as a result of Smith's unlawful and illegal First Child Support Order (**Attachment 15**), Clugston had received a Threatening Letter (driver's license and occupational license), being **Attachment 19** from Davis, which is a Bill of Attainder.

### Eighteenth Cause of Action

Clugston repleads the Seventeenth Cause of Action and Clugston alleges that as a result of Smith's unlawful and illegal First Child Support Order (**Attachment 15**), a Kanag'iq Letter, being **Attachment 20**, was sent to Kanag'iq demanding money, wages, deposits and earnings under the signature of Romero which resulted in approximately $5,000.00 being taken unlawfully and illegally against the will of Clugston.

### Nineteenth Cause of Action

Clugston repleads the Eighteenth Cause of Action and Clugston alleges that as a result of Smith's unlawful and illegal First Child Support Order (**Attachment 15**), Clugston had received a Notice of Garnishment dated June 23, 2005, being **Attachment 21** from Romero, which was illegal and unlawful.

### Twentieth Cause of Action

Clugston repleads the Nineteenth Cause of Action and Clugston alleges that as a result of Smith's unlawful and illegal First Child Support Order (**Attachment 15**), Romero illegally and unlawfully mailed the Matanuska Valley Letter, being **Attachment 22**, ordering them to withhold money, deposits, or balances of Clugston, being an "obligor" with $350.00 being taken and ruining said credit of Clugston.

### Twenty-first Cause of Action

Clugston repleads the Twentieth Cause of Action and Clugston alleges that as a result of Smith's unlawful and illegal First Child Support Order (**Attachment 15**), Romero unlawfully and illegally mailed the Wells Fargo Letter, being **Attachment 23**, ordering them to withhold money, deposits, or balances of Clugston, being an "obligor" with $450.00 being taken and ruining the said credit of Clugston.

### Twenty-second Cause of Action

Clugston repleads the Twentieth-first Cause of Action and Clugston alleges that as a result of Smith's unlawful and illegal First Child Support Order (**Attachment 15**), Hunter unlawfully and illegally threaten Clugston and mailed the Enforcement of Health Care, being **Attachment 24** to Clugston as a "noncustodial parent."

### Twenty-second Cause of Action

Clugston repleads the Twenty-first Cause of Action and Clugston alleges that Smith did unlawfully and illegally enter an amended Order for Child Support, being a Second Child Support Order as evidenced by **Attachment 29**, declaring that Clugston was an "obligor."

### Twenty-third Cause of Action

Clugston repleads the Twenty-second Cause of Action and Clugston alleges that Smith did unlawfully and illegally enter an amended Order for Child Support dated on or about March 13, 2006, being a Second Child Support Order as evidenced by **Attachment 29**, declaring that Clugston was retroactively obligated to a higher rate retroactively back to September 1, 2004, which is in violation of 42 U.S.C. § 666(9)(c) for the approximate new amount of $386.60, being a increase of $112.60 per month from the First Child Support Order. This amounts to a retroactive increase totaling approximately $2,027.00.

### Twenty-fourth Cause of Action

Clugston repleads the Twenty-third Cause of Action and Clugston alleges that Smith did unlawfully and illegally enter an amended Order for Child Support dated on or about March 13, 2006, being a Second Child Support Order as evidenced by **Attachment 29**, declaring that Clugston was retroactively obligated to a higher rate retroactively back to September 1, 2004, which is in violation of 45 CFR § 303.106 for the approximate new amount of $386.60, being a increase of $112.60 per month from the First Child Support Order. This amounts to a retroactive increase totaling approximately $2,027.00.

### Twenty-fifth Cause of Action

Clugston repleads the Twenty-fourth

Cause of Action and Clugston alleges that Smith did unlawfully and illegally enter an amended

Order for Child Support dated on or about March 13, 2006, being a Second Child Support Order as evidenced by **Attachment 29**, declaring that Clugston was retroactively obligated to a higher rate retroactively back to September 1, 2004, which is in violation of Alaska Rule 90.3(h)(2) for the approximate new amount of $386.60, being a increase of $112.60 per month from the First Child Support Order. This amounts to a retroactive increase totaling approximately $2,027.00.

### Twenty-sixth Cause of Action

Clugston repleads the Twenty-fifth Cause of Action and Clugston alleges that CSSD did not disclose their illegal and unlawful actions to Senator Ted Stevens ("Stevens") when Stevens inquired presumably for a response from CSSD because of Clugston's letter to Stevens, and then in the Stevens' Letter to Clugston, he stated that CSSD was enforcing a [presumably legal] court order, and ". . . and suggest the if you wish to amend this order you hire an attorney and return to court to seek a modification of the order."

### Williams

### Twenty-seventh Cause of Action

Clugston repleads the Twenty-sixth Cause of Action and that Williams has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### Twenty-eighth Cause of Action

Clugston repleads the Twenty-seventh Cause of Action and alleges that Williams has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United

States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Twenty-ninth Cause of Action

Clugston repleads the Twenty-eighth Cause of Action and alleges that Williams has not *sworn and subscribed* to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### Thirtieth Cause of Action

Clugston repleads the Twenty-ninth Cause of Action and alleges that Williams has no "Civil Commission" authorizing and empowering Williams to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### Thirty-first Cause of Action

Clugston repleads the Thirtieth Cause of Action and alleges that Williams is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Thirty-second Cause of Action

Clugston repleads the Thirty-first Cause of Action and alleges that Williams has no authority of any of the several States as an "executive Officer", and cannot exercise any "executive Power" of any of the several States as an "executive Officer" in this instant Case.

### Thirty-third Cause of Action

Clugston repleads the Thirty-second Cause of Action and alleges that Williams is not a "public Officer" in any of the several States.

### Thirty-fourth Cause of Action

Clugston repleads the Thirty-third Cause of Action and alleges that Williams with Alaska Bar Association ("Bar") number 8211149 in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules, the Alaska Bar Association has no documents to evidence same.

### Thirty-fifth Cause of Action

Clugston repleads the Thirty-fourth Cause of Action and alleges that by Williams' OATH OF ATTORNEY which is not existing in the Alaska Bar Association in compliance with Alaska Bar Rule 5, by Williams's Rule 64 Affidavit which does exist in the Alaska Bar Association and by the Alaska Bar Rule 9; therefore, Williams is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### Thirty-sixth Cause of Action

Clugston repleads the Thirty-fifth Cause of Action and alleges that Williams has first hand knowledge that Smith is not an "independent Judge" of any of the several States as he is bound by including, but limited to "cooperative agreements" of the Alaska Court System, Alaska

Bar Rules, the Rules of Professional Conduct, and Judicial Code of Alaska.

### Thirty-seventh Cause of Action

Clugston repleads the Thirty-sixth Cause of Action and alleges that Williams has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### Thirty-eighth Cause of Action

Clugston repleads the Thirty-seventh Cause of Action and alleges that Williams did unlawfully and illegally interfere with Clugston's right to Contract by Williams' actions by and through his Contract Opposition, being **Attachment 11**.

### Thirty-ninth Cause of Action

Clugston repleads the Thirty-eighth Cause of Action and alleges that Williams did unlawfully and illegally represent that Clugston was an "obligator" by and through his Clerical Mistake Motion, being **Attachment 25**.

### Fortieth Cause of Action

Clugston repleads the Thirty-ninth Cause of Action and alleges that Williams did unlawfully and illegally claim evidenced by **Attachment 25**, on January 24, 2006, Clerical Mistake Motion that Williams had "contacted Candice Bales, the attorney who drafted the order, and learned that the obligor was most likely her client Leon Clugston." Clugston contacted Bale's Office and talked to Marjorie Hubbard ("Hubbard"), Bale's Assistant. Hubbard stated to Clugston on two conversations on the telephone on March 21, 2006 that it was strongly stated to Williams by Bales that she did not proffer Clugston as the "obligor" and Bales stated very

clearly to Williams that Bales did not represent Clugston at this time or since Bales had withdrawn representation of Clugston on November 3, 2004.

### Forty-first Cause of Action

Clugston repleads the Thirty-ninth Cause of Action and alleges that Williams representing CSSD stated that "Although CSSD does not know who the obligor should be . . ." as evidenced by **Attachment 27**, he unlawfully and illegally proffered that there must be an obligor, including but not limited to damaging Clugston financially and his credit.

### King

### Forth-second Cause of Action

Clugston repleads the Forty-First Cause of Action and that King has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### Forty-third Cause of Action

Clugston repleads the Forty-second Cause of Action and alleges that King has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Forty-fourth Cause of Action

Clugston repleads the Forty-third Cause of Action and alleges that King has not ***sworn***

*and subscribed* to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### Forty-third Cause of Action

Clugston repleads the Forty-fourth Cause of Action and alleges that King has no "Civil Commission" authorizing and empowering King to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### Forty-fourth Cause of Action

Clugston repleads the Forty-third Cause of Action and alleges that King is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Forty-fifth Cause of Action

Clugston repleads the Forty-fourth Cause of Action and alleges that King has no authority of any of the several States as an "executive Officer", and cannot exercise any "executive Power" of any of the several States as an "executive Officer" in this instant Case.

### Forty-sixth Cause of Action

Clugston repleads the Forth-fifth Cause of Action and alleges that King is not a "public Officer" in any of the several States.

### Forty-seventh Cause of Action

Clugston repleads the Forty-sixth Cause of Action and alleges that King has a pecuniary

interest in this instant Case by and through including but not limited to cooperative agreements and the State Plan.

### Forty-eighth Cause of Action

Clugston repleads the Forty-seventh Cause of Action and alleges that King is deemed to know the law and therefore knew that Smith has no "Oath of Office" as a judicial Officer to support the "Constitution of the United States" in a public record as evidenced by **Attachment 6**, and is therefore in violation of Article VI of the Constitution and not a bona fide judicial Officer, i.e. public Officer of the State of Alaska.

### Forty-ninth Cause of Action

Clugston repleads the Forty-ninth Cause of Action and alleges that King is deemed to know the law and knew that Smith has no "Oath of Office" as a "judicial Officer" as evidenced by **Attachment 6** of one the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Forty-ninth Cause of Action

Clugston repleads the Forth-eighth Cause of Action and alleges that King is deemed to know the law and knew Smith has not sworn and subscribed to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record as evidenced by **Attachment 6**.

### Fiftieth Cause of Action

Clugston repleads the Forty-ninth Cause of Action and alleges that King is deemed to know the law and knew that Smith has no "Civil Commission" as evidenced by **Attachment 4** authorizing and empowering Smith to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the judicial Power of any one of the several States.

### Fifty-first Cause of Action

Clugston repleads the Fiftieth Cause of Action and alleges that King is deemed to know the law and knew that Smith is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Fifty-second Cause of Action

Clugston repleads the Fifty-first Cause of Action and alleges that King is deemed to know the law and knew that Smith has no authority of any of the several States as a "judicial Officer", and cannot exercise any "judicial Power" of any of the several States as a "judicial Officer" in this instant Case.

### Fifty-third Cause of Action

Clugston repleads the Sixth Cause of Action and alleges that King is deemed to know the law and knew that Smith is not a "public Officer" in any of the several States.

### Fifty-fourth Cause of Action

Clugston repleads the Fifty-third Cause of Action and alleges that King is deemed to know the law and knew that Smith with Alaska Bar Association ("Bar") number 8211149 is in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules as

evidenced by **Attachment 1** and **Attachment 2**.

### Fifty-fifth Cause of Action

Clugston repleads the Fifty-fourth Cause of Action and alleges King is deemed to know the law and knew that by Smith's OATH OF ATTORNEY (**Attachment 1**) in compliance with Alaska Bar Rule 5, by Smith's Rule 64 Affidavit (**Attachment 2**) and by the Alaska Bar Rule 9; therefore, Smith is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### Fifty-sixth Cause of Action

Clugston repleads the Fifty-fifth Cause of Action and alleges that King is deemed to know the law and knew that Smith is not an "independent Judge" of any of the several States as he is bound by including, but limited to "cooperative agreements" of the Alaska Court System, Alaska Bar Rules, the Rules of Professional Conduct, and Judicial Code of Alaska.

### Fifty-seventh Cause of Action

Clugston repleads the Fifty-sixth Cause of Action and alleges that King is deemed to know the law and knew that Smith has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### Fifty-eightieth Cause of Action

Clugston repleads the Fifth-seventh Cause of Action and that King is deemed to know the law and knew that Williams has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### Fifty-ninth Cause of Action

Clugston repleads the Fifty-eightieth Cause of Action and alleges that King is deemed to know the law and knew that Williams has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Sixtieth Cause of Action

Clugston repleads the Fifty-ninth Cause of Action and alleges King is deemed to know the law and knew that Williams has not *sworn and subscribed* to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### Sixty-first Cause of Action

Clugston repleads the Sixtieth Cause of Action and alleges that King is deemed to know the law and knew that Williams has no "Civil Commission" authorizing and empowering Williams to enter into the duties and powers of an Office created by the constitution or

legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### Sixty-second Cause of Action

Clugston repleads the Sixth-first Cause of Action and alleges that King is deemed to know the law and knew that Williams is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Sixty-third Cause of Action

Clugston repleads the Sixty-second Cause of Action and alleges that King is deemed to know the law and knew that Williams has no authority of any of the several States as an "executive Officer", and cannot exercise any "executive Power" of any of the several States as an "executive Officer" in this instant Case.

### Sixty-fourth Cause of Action

Clugston repleads the Sixty-third Cause of Action and alleges that King is deemed to know the law and knew that Williams is not a "public Officer" in any of the several States.

### Sixty-fifth Cause of Action

Clugston repleads the Sixty-fourth Cause of Action and alleges that King is deemed to know the law and knew that Williams with Alaska Bar Association ("Bar") number 8211149 in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules which is mandatory upon Williams, but no documents are on file at the Alaska Bar Association.

### Sixty-sixth Cause of Action

Clugston repleads the Sixty-fifth Cause of Action and alleges that King is deemed to

know the law and knew that Williams by and through Williams' OATH OF ATTORNEY which not exist in the Alaska Bar Association in compliance with Alaska Bar Rule 5, by Williams's Rule 64 Affidavit which does not exist at the Alaska Bar Association and by the Alaska Bar Rule 9; therefore, Williams is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### Sixty-seventh Cause of Action

Clugston repleads the Sixty-sixth Cause of Action and alleges that King is deemed to know the law and knew that Williams has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### Sixty-eightieth Cause of Action

Clugston repleads the Sixty-seventh Cause of Actions and alleges as evidenced by **Attachment 16**, Clugston Demanded an Administrative Review November 30, 2004 with the Statutes and Regulations in support ("Demand for Administrative Review") and as evidenced by **Attachment 17**, King responded with a letter dated December 20, 2004 ("King Letter"), addressing none of the issues put forward by Clugston and by King's *ipse dixit* determination that Clugston was a "noncustodial parent."

### Sixty-ninth Cause of Action

Clugston repleads the Sixth-eightieth Cause of Action and alleges as evidenced by **Attachment 18**, Enforcement of Health Care dated May 11, 2005, King did unlawfully and illegally *ipse dixit* determine that Clugston was "noncustodial parent."

### Seventieth Cause of Action

Clugston repleads the Sixty-ninth Cause of Action and alleges that King did evidenced by **Attachment 21**, Notice of Garnishment dated June 23, 2005 unlawfully and illegally state that Clugston owed $6,063.16 and that two letters being Matanuska Valley Letter as **Attachment 22**, and Wells Fargo Letter would be generated and mailed to each demanding the property (money) of Clugston which resulted in the unlawful and illegal taking of Clugston's property in the approximate amount of $800.00.

### Romero

### Seventy-first Cause of Action

Clugston repleads the Forty-First Cause of Action and that Romero has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### Seventy-second Cause of Action

Clugston repleads the Seventy-first Cause of Action and alleges that Romero has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**,

and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Seventy-third Cause of Action

Clugston repleads the Seventy-second Cause of Action and alleges that Romero has not *sworn and subscribed* to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### Seventy-fourth Cause of Action

Clugston repleads the Seventy-third Cause of Action and alleges that Romero has no "Civil Commission" authorizing and empowering Romero to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### Seventy-fifth Cause of Action

Clugston repleads the Seventy-fourth Cause of Action and alleges that Romero is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Seventy-sixth Cause of Action

Clugston repleads the Seventy-fifth Cause of Action and alleges that Romero has no authority of any of the several States as an "executive Officer", and cannot exercise any "executive Power" of any of the several States as an "executive Officer" in this instant Case.

### Seventy-fifth Cause of Action

Clugston repleads the Seventy-fourth Cause of Action and alleges that Romero is not a "public Officer" in any of the several States.

### Seventy-sixth Cause of Action

Clugston repleads the Seventy-fifth Cause of Action and alleges that Romero has a pecuniary interest in this instant Case by and through including but not limited to cooperative agreements and the State Plan.

### Seventy-seventh Cause of Action

Clugston repleads the Seventy-sixth Cause of Action and alleges that Romero is deemed to know the law and therefore knew that Smith has no "Oath of Office" as a judicial Officer to support the "Constitution of the United States" in a public record as evidenced by **Attachment 6**, and is therefore in violation of Article VI of the Constitution and not a bona fide judicial Officer, i.e. public Officer of the State of Alaska.

### Seventy-eightieth Cause of Action

Clugston repleads the Seventy-seventh Cause of Action and alleges that Romero is deemed to know the law and knew that Smith has no "Oath of Office" as a "judicial Officer" as evidenced by **Attachment 6** of one the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Seventy-ninth Cause of Action

Clugston repleads the Seventy-eightieth Cause of Action and alleges that Romero is deemed to know the law and knew Smith has not sworn and subscribed to the Oath of Office as

public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record as evidenced by **Attachment 6**.

### Eightieth Cause of Action

Clugston repleads the Seventy-ninth Cause of Action and alleges that Romero is deemed to know the law and knew that Smith has no "Civil Commission" as evidenced by **Attachment 4** authorizing and empowering Smith to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the judicial Power of any one of the several States.

### Eighty-first Cause of Action

Clugston repleads the Eightieth Cause of Action and alleges that Romero is deemed to know the law and knew that Smith is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Eighty-second Cause of Action

Clugston repleads the Eighty-first Cause of Action and alleges that Romero is deemed to know the law and knew that Smith has no authority of any of the several States as a "judicial Officer", and cannot exercise any "judicial Power" of any of the several States as a "judicial Officer" in this instant Case.

### Eighty-third Cause of Action

Clugston repleads the Sixth Cause of Action and alleges that Romero is deemed to know the law and knew that Smith is not a "public Officer" in any of the several States.

### Eighty-fourth Cause of Action

Clugston repleads the Eighty-third Cause of Action and alleges that Romero is deemed to know the law and knew that Smith with Alaska Bar Association ("Bar") number 8211149 is in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules as evidenced by **Attachment 1** and **Attachment 2**.

### Eighty-fifth of Action

Clugston repleads the Eighty-fourth Cause of Action and alleges Romero is deemed to know the law and knew that by Smith's OATH OF ATTORNEY (**Attachment 1**) in compliance with Alaska Bar Rule 5, by Smith's Rule 64 Affidavit (**Attachment 2**) and by the Alaska Bar Rule 9; therefore, Smith is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### Eighty-sixth Cause of Action

Clugston repleads the Eighty-fifth Cause of Action and alleges that Romero is deemed to know the law and knew that Smith is not an "independent Judge" of any of the several States as he is bound by including, but limited to "cooperative agreements" of the Alaska Court System, Alaska Bar Rules, the Rules of Professional Conduct, and Judicial Code of Alaska.

### Eighty-seventh Cause of Action

Clugston repleads the Eighty-sixth Cause of Action and alleges that Romero is deemed to

know the law and knew that Smith has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### Eighty-eightieth Cause of Action

Clugston repleads the Eighty-eightieth Cause of Action and that Romero is deemed to know the law and knew that Williams has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### Eighty-ninth Cause of Action

Clugston repleads the Eighty-eightieth Cause of Action and alleges that Romero is deemed to know the law and knew that Williams has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### Ninetieth Cause of Action

Clugston repleads the Eighty-ninth Cause of Action and alleges Romero is deemed to know the law and knew that Williams has not *sworn and subscribed* to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a

public record.

### Ninety-first Cause of Action

Clugston repleads the Ninetieth Cause of Action and alleges that Romero is deemed to know the law and knew that Williams has no "Civil Commission" authorizing and empowering Williams to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### Ninety-second Cause of Action

Clugston repleads the Ninety-first Cause of Action and alleges that Romero is deemed to know the law and knew that Williams is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### Ninety-third Cause of Action

Clugston repleads the Ninety-second Cause of Action and alleges that Romero is deemed to know the law and knew that Williams has no authority of any of the several States as an "executive Officer", and cannot exercise any "executive Power" of any of the several States as an "executive Officer" in this instant Case.

### Ninety-fourth Cause of Action

Clugston repleads the Ninety-fourth Cause of Action and alleges that Romero is deemed to know the law and knew that Williams is not a "public Officer" in any of the several States.

### Ninety-fifth Cause of Action

Clugston repleads the Ninety-fourth Cause of Action and alleges that Romero is deemed

to know the law and knew that Williams with Alaska Bar Association ("Bar") number 8211149 in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules which do not exist in the Alaska Bar Association, though they are required to be on file.

### Ninety-sixth Cause of Action

Clugston repleads the Ninety-fifth Cause of Action and alleges that Romero is deemed to know the law and knew that Williams by and through Williams' OATH OF ATTORNEY which do not exist in the Alaska Bar Association in compliance with Alaska Bar Rule 5, by Williams's Rule 64 Affidavit which does not exist in the Alaska Bar Association and by the Alaska Bar Rule 9; therefore, Williams is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### Ninety-seventh Cause of Action

Clugston repleads the Ninety-sixth Cause of Action and alleges that Romero is deemed to know the law and knew that Williams has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### Ninety-eightieth Cause of Action

Clugston repleads the Ninety-seventh Cause of Action and alleges that Romero

unlawfully and illegally send the Kanag'iq Letter, being **Attachment 20**, in which Clugston did have the damage to the relations of Clugston with Kanag'iq.

### Ninety-ninth Cause of Action

Clugston repleads the Ninety-eightieth Cause of Action and alleges that Romero did illegally and unlawfully mailed the Matanuska Valley Letter, being **Attachment 22**, ordering them to withhold money, deposits, or balances of Clugston, being an "obligor", with $350.00 being taken and ruining said credit of Clugston.

### One-hundredth Cause of Action

Clugston repleads the Ninety-ninth Cause of Action and alleges that Romero did unlawfully and illegally mailed the Wells Fargo Letter, being **Attachment 23**, ordering them to withhold money, deposits, or balances of Clugston, being an "obligor", with $450.00 being taken and ruining the said credit of Clugston.

### Hollenbeck

### One Hundred-first Cause of Action

Clugston repleads the Ninety-ninth Cause of Action and that Hollenbeck has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### One Hundred-second Cause of Action

Clugston repleads the One Hundred-first Cause of Action and alleges that Hollenbeck has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United

States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### One Hundred-third Cause of Action

Clugston repleads the One Hundred-second Cause of Action and alleges that Hollenbeck has not ***sworn and subscribed*** to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### One Hundred-fourth Cause of Action

Clugston repleads the One Hundred-third Cause of Action and alleges that Hollenbeck has no "Civil Commission" authorizing and empowering Hollenbeck to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### One Hundred-fifth Cause of Action

Clugston repleads the One Hundred-fourth Cause of Action and alleges that Hollenbeck is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### One Hundred-sixth Cause of Action

Clugston repleads the One Hundred-fifth Cause of Action and alleges that Hollenbeck has no authority of any of the several States as an "executive Officer", and cannot exercise any

"executive Power" of any of the several States as an "executive Officer" in this instant Case.

### One Hundred-seventh Cause of Action

Clugston repleads the One Hundred-sixth Cause of Action and alleges that Hollenbeck is not a "public Officer" in any of the several States.

### One Hundred-eighth Cause of Action

Clugston repleads the One Hundred-seventh Cause of Action and alleges that Hollenbeck has a pecuniary interest in this instant Case by and through including but not limited to cooperative agreements and the State Plan.

### One Hundred-ninth Cause of Action

Clugston repleads the One Hundred-eighth Cause of Action and alleges that Hollenbeck is deemed to know the law and therefore knew that Smith has no "Oath of Office" as a judicial Officer to support the "Constitution of the United States" in a public record as evidenced by **Attachment 6**, and is therefore in violation of Article VI of the Constitution and not a bona fide judicial Officer, i.e. public Officer of the State of Alaska.

### One Hundred-tenth Cause of Action

Clugston repleads the One Hundred-ninth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith has no "Oath of Office" as a "judicial Officer" as evidenced by **Attachment 6** of one the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### One Hundred-eleventh Cause of Action

Clugston repleads the One Hundred-tenth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew Smith has not sworn and subscribed to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record as evidenced by **Attachment 6**.

**One Hundred-twelfth Cause of Action**

Clugston repleads the One Hundred eleventh Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith has no "Civil Commission" as evidenced by **Attachment 4** authorizing and empowering Smith to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the judicial Power of any one of the several States.

**One Hundred-thirteenth Cause of Action**

Clugston repleads the One Hundred-twelfth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

**One Hundred-fourteenth Cause of Action**

Clugston repleads the One Hundred-thirteenth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith has no authority of any of the several States as a "judicial Officer", and cannot exercise any "judicial Power" of any of the several States as a "judicial Officer" in this instant Case.

### One Hundred-fifteenth Cause of Action

Clugston repleads the One Hundred-fourteenth of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith is not a "public Officer" in any of the several States.

### One Hundred-sixteenth Cause of Action

Clugston repleads the One Hundred-fifteenth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith with Alaska Bar Association ("Bar") number 8211149 is in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules as evidenced by **Attachment 1** and **Attachment 2**.

### One Hundred-seventeenth of Action

Clugston repleads the One Hundred-sixteenth Cause of Action and alleges Hollenbeck is deemed to know the law and knew that by Smith's OATH OF ATTORNEY (**Attachment 1**) in compliance with Alaska Bar Rule 5, by Smith's Rule 64 Affidavit (**Attachment 2**) and by the Alaska Bar Rule 9; therefore, Smith is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### One Hundred-eighteenth Cause of Action

Clugston repleads the One Hundred-seventeenth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith is not an "independent Judge" of any

of the several States as he is bound by including, but limited to "cooperative agreements" of the Alaska Court System, Alaska Bar Rules, the Rules of Professional Conduct, and Judicial Code of Alaska.

## One Hundred-nineteenth Cause of Action

Clugston repleads the One Hundred-eighteenth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Smith has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

## One Hundred-twentieth Cause of Action

Clugston repleads the One Hundred-nineteenth Cause of Action and that Hollenbeck is deemed to know the law and knew that Williams has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

## One Hundred Twenty-first Cause of Action

Clugston repleads the One Hundred-twentieth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### One Hundred Twenty-second Cause of Action

Clugston repleads the One Hundred Twenty-third Cause of Action and alleges Hollenbeck is deemed to know the law and knew that Williams has not ***sworn and subscribed*** to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### One Hundred Twenty-third Cause of Action

Clugston repleads the One Hundred Twenty-second Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams has no "Civil Commission" authorizing and empowering Williams to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### One Hundred Twenty-fourth Cause of Action

Clugston repleads the One Hundred Twenty-third Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### One Hundred Twenty-fifth Cause of Action

Clugston repleads the One Hundred Twenty-fourth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams has no authority of any of the several States as an "executive Officer", and cannot exercise any "executive Power" of any of the

several States as an "executive Officer" in this instant Case.

## One Hundred Twenty-sixth Cause of Action

Clugston repleads the One Hundred Twenty-fifth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams is not a "public Officer" in any of the several States.

## One Hundred Twenty-seventh Cause of Action

Clugston repleads the One Hundred Twenty-eighth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams with Alaska Bar Association ("Bar") number 8211149 in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules as evidenced by which are to be on file, but do not exist at the Alaska Bar Association.

## One Hundred Twenty-eighth Cause of Action

Clugston repleads the One Hundred Twenty-seventh Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams by and through Williams' OATH OF ATTORNEY which is to be on file in the Alaska Bar Association but does not exist in compliance with Alaska Bar Rule 5, by Williams's Rule 64 Affidavit which is to be on file in the Alaska Bar Association but does not exist and by the Alaska Bar Rule 9; therefore, Williams is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed

in the future.

### One Hundred Twenty-ninth Cause of Action

Clugston repleads the One Hundred Twenty-eighth Cause of Action and alleges that Hollenbeck is deemed to know the law and knew that Williams has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### One Hundred Thirtieth Cause of Action

Clugston repleads the One Hundred Twenty-ninth Cause of Action and alleges that Hollenbeck did file unlawfully and illegally file a Lien, being **Attachment 13**, in the Palmer Recording District on August 18, 2004, to which Clugston not given notice until January of 2005, approximately six (6) months later. This Lien has damaged Clugston's credit and reputation in the community, and made it impossible for Clugston to sell said property if he chose to unless this unlawful and illegal Lien is satisfied.

### Langham

### One Hundred Thirty-first Cause of Action

Clugston repleads the One Hundred Thirtieth Cause of Action and that Langham is deemed to know the law and knew that King, Romero, and Hollenbeck has no "Oath of Office" as a executive Officer to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### One Hundred Thirty-second Cause of Action

Clugston repleads the One Hundred Thirty-first Cause of Action and that Langham is deemed to know the law and knew that King, Romero, and Hollenbeck have no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### One Hundred Thirty-third Cause of Action

Clugston repleads the One Hundred Thirty-second Cause of Action and that Langham is deemed to know the law and knew that King, Romero, and Hollenbeck have not ***sworn and subscribed*** to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### One Hundred Thirty-fourth Cause of Action

Clugston repleads the One Hundred Thirty-third Cause of Action and that Langham is deemed to know the law and knew that King, Romero, and Hollenbeck have no "Civil Commission" authorizing and empowering King, Romero and Hollenbeck to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the executive Power of any one of the several States.

### One Hundred Thirty-fifth Cause of Action

Clugston repleads the One Hundred Thirty-fourth Cause of Action and that Langham is

deemed to know the law and knew that King, Romero, and Hollenbeck are mere employees of the State of Alaska and not public Officers of the State of Alaska and each has signed an "Employee Affidavit" attesting to same.

### One Hundred Thirty-sixth Cause of Action

Clugston repleads the One Hundred Thirty-fifth Cause of Action and that Langham is deemed to know the law and knew that King, Romero, and Hollenbeck have no authority of any of the several States as a "executive Officer", and cannot exercise any "executive Power" of any of the several States as a "executive Officer" in this instant Case.

### One Hundred Thirty-seventh Cause of Action

Clugston repleads the One Hundred Thirty-sixth Cause of Action and that Langham is deemed to know the law and knew that King, Romero, and Hollenbeck are not "public Officers" in any of the several States.

### One Hundred Thirty-eighth Cause of Action

Clugston repleads the One Hundred Thirty-seventh Cause of Action and alleges that Langham is deemed to know the law and knew that King, Romero, and Hollenbeck each had a pecuniary interest in this instant Case by and through including but not limited to cooperative agreements and the State Plan.

### One Hundred Thirty-ninth Cause of Action

Clugston repleads the One Hundred Thirty-eighth Cause of Action and alleges that Langham is deemed to know the law and therefore knew that Smith has no "Oath of Office" as a judicial Officer to support the "Constitution of the United States" in a public record as evidenced by **Attachment 6**, and is therefore in violation of Article VI of the Constitution and not a bona

fide judicial Officer, i.e. public Officer of the State of Alaska.

### One Hundred Fortieth Cause of Action

Clugston repleads the One Hundred Thirty-ninth Cause of Action and alleges that Langham is deemed to know the law and knew that Smith has no "Oath of Office" as a "judicial Officer" as evidenced by **Attachment 6** of one the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### One Hundred Forty-first Cause of Action

Clugston repleads the One Hundred-Fortieth Cause of Action and alleges that Langham is deemed to know the law and knew Smith has not sworn and subscribed to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record as evidenced by **Attachment 6**.

### One Hundred Forty-second Cause of Action

Clugston repleads the One Hundred Forty-first Cause of Action and alleges that Langham is deemed to know the law and knew that Smith has no "Civil Commission" as evidenced by **Attachment 4** authorizing and empowering Smith to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several States to exercise the judicial Power of any one of the several States.

### One Hundred Forty-third Cause of Action

Clugston repleads the One Hundred Forty-second Cause of Action and alleges that Langham is deemed to know the law and knew that Smith is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### One Hundred Forty-fourth Cause of Action

Clugston repleads the One Hundred Forty-fifth Cause of Action and alleges that Langham is deemed to know the law and knew that Smith has no authority of any of the several States as a "judicial Officer", and cannot exercise any "judicial Power" of any of the several States as a "judicial Officer" in this instant Case.

### One Hundred Forty-fifth Cause of Action

Clugston repleads the One Hundred Forty-fourth of Action and alleges that Langham is deemed to know the law and knew that Smith is not a "public Officer" in any of the several States.

### One Hundred Forty-sixth Cause of Action

Clugston repleads the One Hundred Forty-fifth Cause of Action and alleges that Langham is deemed to know the law and knew that Smith with Alaska Bar Association ("Bar") number 8211149 is in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules as evidenced by **Attachment 1** and **Attachment 2**.

### One Hundred Forty-seventh of Action

Clugston repleads the One Hundred Forty-sixth Cause of Action and alleges Langham is deemed to know the law and knew that by Smith's OATH OF ATTORNEY (**Attachment 1**) in

compliance with Alaska Bar Rule 5, by Smith's Rule 64 Affidavit (**Attachment 2**) and by the Alaska Bar Rule 9; therefore, Smith is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### One Hundred Forty-eighth Cause of Action

Clugston repleads the One Hundred Forth-seventh Cause of Action and alleges that Langham is deemed to know the law and knew that Smith is not an "independent Judge" of any of the several States as he is bound by including, but limited to "cooperative agreements" of the Alaska Court System, Alaska Bar Rules, the Rules of Professional Conduct, and Judicial Code of Alaska.

### One Hundred Forty-ninth Cause of Action

Clugston repleads the One Hundred Forty-eighth Cause of Action and alleges that Langham is deemed to know the law and knew that Smith has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### One Hundred Fiftieth Cause of Action

Clugston repleads the One Hundred Forty-ninth Cause of Action and that Langham is deemed to know the law and knew that Williams has no "Oath of Office" as a executive Officer

to support the "Constitution of the United States" in a public record and is therefore in violation of Article VI of the Constitution and not a bona fide executive Officer, i.e. public Officer of the State of Alaska.

### One Hundred Fifty-first Cause of Action

Clugston repleads the One Hundred Fiftieth of Action and alleges that Langham is deemed to know the law and knew that Williams has no "Oath of Office" as a "executive Officer" to one of the several States sworn to support the "Constitution of the United States" required by the sixth article of the Constitution of the United States as a Law of the United States in Statute I, being 1 Stat 23 as evidenced by **Attachment 7**, and a public record or certificate to record or certify said oath of office administered in violation of the 1 Stat 23.

### One Hundred Fifty-second Cause of Action

Clugston repleads the One Hundred Fifty-first Cause of Action and alleges Langham is deemed to know the law and knew that Williams has not *sworn and subscribed* to the Oath of Office as public Officer as required by Article XII Section 5 of the Constitution of the State of Alaska to the "Constitution of the United States" and to have said Oath of Office as a public officer in a public record.

### One Hundred Fifty-third Cause of Action

Clugston repleads the One Hundred Fifty-second Cause of Action and alleges that Langham is deemed to know the law and knew that Williams has no "Civil Commission" authorizing and empowering Williams to enter into the duties and powers of an Office created by the constitution or legislature of one of the several States under the signature of a Governor and Seal of the Secretary of State of one of the several States under the authority of one of the several

States to exercise the executive Power of any one of the several States.

### One Hundred Fifty-fourth Cause of Action

Clugston repleads the One Hundred Fifty-third Cause of Action and alleges that Langham is deemed to know the law and knew that Williams is a mere employee of the State of Alaska and not a public Officer of the State of Alaska and has signed an "Employee Affidavit" attesting to same.

### One Hundred Fifty-fifth Cause of Action

Clugston repleads the One Hundred Fifty-fourth Cause of Action and alleges that Langham is deemed to know the law and knew that Williams has no authority of any of the several States as an "executive Officer", and cannot exercise any "executive Power" of any of the several States as an "executive Officer" in this instant Case.

### One Hundred Fifty-sixth Cause of Action

Clugston repleads the One Hundred Fifty-fifth Cause of Action and alleges that Langham is deemed to know the law and knew that Williams is not a "public Officer" in any of the several States.

### One Hundred Fifty-seventh Cause of Action

Clugston repleads the One Hundred Fifty-sixth Cause of Action and alleges that Langham is deemed to know the law and knew that Williams with Alaska Bar Association ("Bar") number 8211149 in good standing with said Bar and is bound as a member Bar to said Bar's Charter and Rules which is to be on file in the Alaska Bar Association, but no such documents exist.

### One Hundred Fifty-eighth Cause of Action

Clugston repleads the One Hundred Fifty-seventh Cause of Action and alleges that

Langham is deemed to know the law and knew that Williams by and through Williams' OATH OF ATTORNEY which are to be filed in the Alaska Bar Association, but do not exist in compliance with Alaska Bar Rule 5, by Williams' Rule 64 Affidavit which is to on file in the Alaska Bar Association, but does not exist, and by the Alaska Bar Rule 9; therefore, Williams is bound by the Code of Judicial Conduct of Alaska ("Judicial Code"), bound by the Rules of Professional Conduct of Alaska ("Professional Code"), bound by to standards imposed upon current and future Bar members, bound by the Ethics Opinions that have been or may hereafter be adopted by the Board of Governors of the Bar, bound to assist any member of the public in filing grievance against members of the Bar, and bound by other standards that may be imposed in the future.

### One Hundred Fifty-ninth Cause of Action

Clugston repleads the One Hundred Fifth-eighth Cause of Action and alleges that Langham is deemed to know the law and knew that Williams has a pecuniary interest in this instant Case by and through cooperative agreements, including but not limited to cooperative agreements between the Alaska Court System and Alaska Bar Rules, the Rules of Professional Conduct, and the Judicial Code of Alaska.

### One Hundred Sixtieth Cause of Action

Clugston repleads the One Hundred Fifty-ninth Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the taking of the property (money) of Clugston.

### One Hundred Sixty-first Cause of Action

Clugston repleads the One Hundred Sixtieth Cause of Action and alleges Langham did by

and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the damaging of the credit of Clugston.

### One Hundred Sixty-second Cause of Action

Clugston repleads the One Hundred Sixty-first Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the damaging the reputation of Clugston.

### One Hundred Sixty-third Cause of Action

Clugston repleads the One Hundred Sixty-second Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the taking of the property (money) of Clugston for Langham's unjust financial enrichment.

### One Hundred Sixty-fourth Cause of Action

Clugston repleads the One Hundred Sixty-third Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the discrimination of Clugston by having him designated as a "noncustodial parent.

### One Hundred Sixty-fifth Cause of Action

Clugston repleads the One Hundred Sixty-fourth Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the discrimination of Clugston by having him designated as an "obligor."

### One Hundred Sixty-sixth Cause of Action

Clugston repleads the One Hundred Sixty-fifth Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the taking of the property (money) of Clugston by knowingly and intentionally being "under employed" and quitting her job.

### One Hundred Sixty-seventh Cause of Action

Clugston repleads the One Hundred Sixty-sixth Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally participated in the creating of financial obligations upon of Clugston without his knowledge.

### One Hundred Sixty-eighth Cause of Action

Clugston repleads the One Hundred Sixty-seventh Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally unilaterally violated the Contract between Langham and Clugston.

### One Hundred Sixty-ninth Cause of Action

Clugston repleads the One Hundred Sixty-eighth Cause of Action and alleges Langham did by and through the assistance of King, Williams, Romero, Hollenbeck and Smith did unlawfully and illegally make application to CSSD as a vindictive move against Clugston for him filing for full custody for reasons concerning Nicholas' well being and a legal right in the "Administrative State."

### Bill of Attainder, which includes the Bill of Pains and Penalties

### One Hundred Seventieth Cause of Action

Clugston repleads the One Hundred Sixty-ninth Cause of Action and alleges Langham,

King, Williams, Romero, Hollenbeck and Smith did unlawfully and illegally participated in the taking of the property (money) of Clugston with out due process of law and the judicial Power of any of the several States in a judgment, being a Bill of Attainder which includes the Bill of Pains and Penalties.

### One Hundred Seventy-first Cause of Action

Clugston repleads the One Hundred Seventieth Cause of Action and alleges Langham, King, Williams, Romero, Hollenbeck and Smith did unlawfully and illegally participated with Clugston's means to travel and support his family with the Threatening Letter to suspend Clugston's driver's license or passport by and through as evidenced by **Attachment 31**, being the State Plan of the State of Alaska "2.12 Procedures to Improve Program Effectiveness" authorized by 42 U.S.C. § 654(20) and 42 U.S.C. § 666(a)(16) to coerce Clugston to pay a debt with no due process of law, no judgment of any court with any judicial Power of any of the several States, and under the guise of the Administrative State that Clugston is a "citizen of the United States" with a SSN, and therefore have no constitutionally secured rights with this being a Bill of Attainder, i.e. Bill of Pains and Penalties.

### One Hundred Seventy-second Cause of Action

Clugston repleads the One Hundred Seventy-first Cause of Action and alleges Langham, King, Williams, Romero, Hollenbeck and Smith did unlawfully and illegally participated  in cooperative agreements which are federal law, i.e., Laws of the United States, involving Clugston and Nicholas as *Held* in *Cuyler v. Adams*, 449 U.S. 433, 440, (1981) to wit:

> But where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, **the consent of Congress transforms the States' agreement into federal law under the Compact Clause.** (cites omitted) [*Emphasis added]*

.

### One Hundred Seventy-third Cause of Action

Clugston repleads the One Hundred Seventy-second Cause of Action and alleges Langham, King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally did participated  in cooperative agreements which are federal law, i.e., Laws of the United States, involving Clugston and Nicholas as *Held* in *Cuyler v. Adams*, 449 U.S. 433, 440 (1981) that bind King, Williams, Romero, Hollenbeck and Smith to the scrutiny and oversight of the Region Ten Social Security Director and other parties that exercise no executive Power, but are within agencies of the government of the United States.

### One Hundred Seventy-fourth Cause of Action

Clugston repleads the One Hundred Seventy-third Cause of Action and alleges Langham, King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally did participated  in cooperative agreements which are federal law, i.e., Laws of the United States, involving Clugston and Nicholas as *Held* in *Cuyler v. Adams*, 449 U.S. 433, 440 (1981) that bind King, Williams, Romero, Hollenbeck and Smith to the scrutiny and oversight of the Region Ten Social Security Director and other federal parties that exercise no executive Power, but are within agencies of the government of the United States in which all of the parties directly or indirectly have a pecuniary interest and will be penalized if King's, Williams', Romero's, Hollenbeck's and Smith's are not within the parameters of the Region Ten Social Security Director or other federal parties.

### One Hundred Seventy-fifth Cause of Action

Clugston repleads the One Hundred Seventy-fourth Cause of Action and alleges Langham, King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally did participated  in

cooperative agreements which are federal law, i.e., Laws of the United States, involving Clugston and Nicholas as **Held** in *Cuyler v. Adams*, 449 U.S. 433, 440 (1981) that bind King, Williams, Romero, Hollenbeck and Smith to the scrutiny and oversight of the Region Ten Social Security Director and other federal parties that exercise no executive Power, but are within agencies of the government of the United States in which all of the parties directly or indirectly have a pecuniary interest and will be penalized if King's, Williams', Romero's, Hollenbeck's and Smith's are not within the parameters of the Region Ten Social Security Director or other federal parties oversight which violates the separation of Power of the several States and of the United States.

### One Hundred Seventy-sixth Cause of Action

Clugston repleads the One Hundred Seventy-fifth Cause of Action and alleges Langham, King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally did participated in cooperative agreements which are federal law, i.e., Laws of the United States, involving Clugston and Nicholas as **Held** in *Cuyler v. Adams*, 449 U.S. 433, 440 (1981) that bind King, Williams, Romero, Hollenbeck and Smith to the scrutiny and oversight of the Region Ten Social Security Director and other federal parties that exercise no executive Power, but are within agencies of the government of the United States in which all of the parties directly or indirectly have a pecuniary interest and will be penalized if King's, Williams', Romero's, Hollenbeck's and Smith's are not within the parameters of the Region Ten Social Security Director or other federal parties which is not cognizance in any Court of the United States exercising judicial Power of the United States under the authority of the United States arising in Law and Equity of all Cases in Article III.

### One Hundred Seventy-seventh Cause of Action

Clugston repleads the One Hundred Seventy-fifth Cause of Action and alleges Langham,

King, Williams, Romero, Hollenbeck and Smith unlawfully and illegally did participated in the Alaska Rule 90.3, which is merely interpretative rule of court and does not have the force and effect of Law.  No rule of court or legislation where rights are secured by the Constitution can abrogate them. i.e. Rule 90.3, of Clugston's as held in *Miranda v. Arizona*,  384 U.S. 436, 491(1966), i.e. due process of law and the taking of property (money) without the judicial Power of one of the several States in a judgment.

### One Hundred Seventy-eighth Cause of Action

Clugston repleads the One Hundred Seventy-seventh Cause of Action and alleges King, Williams, Romero, Hollenbeck and Smith are knowingly, willfully, and intentionally attempting with threats and coercion to force Clugston to submit to the status of a noncustodial parent, i.e. absent parent, i.e. obligor by threatening Clugston with the suspension of the driver's license with the direct result of depriving the means to support his family and then exposing Clugston to criminal charges.  This is all a Bill of Attainder, i.e. Bill of Pains and Penalties, being a legislative penalty without Due Process of Law.

### One Hundred Seventy-ninth Cause of Action

Clugston repleads the One Hundred Seventy-eighth Cause of Action and alleges King, Williams, Romero, Hollenbeck, Langham, and Smith are all knowingly, willingly and intentionally using Bills of Attainder and other processes without Due Process of Law to extract from Clugston money (property) from Clugston and giving this to Langham, when it known and even affirmed by Smith, being **Attachment 14**, that Clugston and Langham have ***joint legal custody***, which is exactly equal in all respects between Clugston and Langham concerning Nicholas, and ***shared physical custody***, which is exactly equal in all respects between Clugston and Langham

concerning Nicholas.

### One Hundred Eightieth Cause of Action

Clugston repleads the One Hundred Seventy-ninth Cause of Action and alleges King, Williams, Romero, Hollenbeck, Langham, and Smith are all knowingly, willingly and intentionally using Bills of Attainder against Clugston unlawfully and illegally when by statute and decisions of the Supreme Court of Alaska *each parent is obligated to support their children* as held in *Matthews v. Matthews*, 739 P.2d 1298, 1299 (Alaska 1987), to wit:

> A parent is obligated both by statute and at common law to support his or her children. AS 25.20.030; In re J.J.J., 718 P.2d 948, 949 (Alaska 1986). This duty exists even in the absence of a court order of support. In re Adoption of C.M.G., 656 P.2d 262 (Okl.1982); Sturdy v. Sturdy, 67 Ill.App.2d 469, 214 N.E.2d 607, 611 (1966); Miles v. Miles, 20 Ill.App.2d 375, 156 N.E.2d 371, 373 (1959). A **parent's duty of support encompasses a duty to reimburse other persons who provide the support the parent owes**. Baggs v. Anderson, 528 P.2d 141, 143 (Utah 1974). *[Emphasis added]*

### One Hundred Eightieth-first Cause of Action

Clugston repleads the One Hundred Eightieth Cause of Action and alleges King, Williams, Romero, Hollenbeck, Langham, and Smith are all knowingly, willingly and intentionally using Bills of Attainder unlawfully and illegally to select Clugston as a "noncustodial parent" in violation of ©AS 25.27.225, when the facts are in evidence that both Langham and Clugston have *joint legal custody* i.e. *both equal*, and *shared physical custody*, i.e. *both exactly equal*.

### One Hundred Eightieth-second Cause of Action

Clugston repleads the One Hundred Eightieth-first Cause of Action and alleges King's, Williams", Romero's, Hollenbeck's, Langham's, and Smith's actions were arbitrary and capricious and without authority of Law to which Clugston over and over submitted evidence

and laws which were ignored intentionally, knowingly, and willingly.

### One Hundred Eightieth-third Cause of Action

Clugston repleads the One Hundred Eightieth-second Cause of Action and alleges King's, Williams", Romero's, Hollenbeck's, Langham's, and Smith's violated Clugston's fundamental rights of property (money) with due process of law secured in the Privileges and Immunities Clause of the Constitution of the United States.

### One Hundred Eightieth-fourth Cause of Action

Clugston repleads the One Hundred Eightieth-third Cause of Action and alleges King's, Williams", Romero's, Hollenbeck's, Langham's, and Smith's violated Clugston's fundamental rights of child rearing and education with due process of law secured in the Privileges and Immunities Clause of the Constitution of the United States.

### One Hundred Eightieth-fifth Cause of Action

Clugston repleads the One Hundred Eightieth-fourth Cause of Action and alleges King's, Williams", Romero's, Hollenbeck's, Langham's, and Smith's violated Clugston's fundamental rights of equal protection with due process of law concerning his property and childrearing secured in the Privileges and Immunities Clause of the Constitution of the United States.

### One Hundred Eightieth-sixth Cause of Action

Clugston repleads the One Hundred Eightieth-fifth Cause of Action and alleges King's, Williams", Romero's, Hollenbeck's, Langham's, and Smith's have been using Private Law by and through Memorandums of Understanding and Cooperative Agreements violating Clugston's fundamental rights secured in the Privileges and Immunities Clause of the Constitution of the

United States.

## Remedy

## Smith

*Therefore*, Smith, who is impersonating a public Officer of the State of Alaska, and a judicial Officer of one of the several States is in violation of Article VI of the Constitution of the United States, 1 Stat 23, and the Constitution of Alaska Article XII section 5 with no Oath of Office as  public Officer to the "Constitution of the United States" should be immediately impeached and removed from Smith's purported Office.

*And further*, as Smith is not a public Officer of the State of Alaska and a judicial Officer with a Civil Commission lawfully and legally appointing him to an Office one of the several States, Smith should be immediately impeached and removed from Smith's purported Office.

*And further*, all of Smith's purported Orders and other issues in his Court in this instant Case in the State of Alaska should be vacated and ruled void, as Smith was not exercising the judicial Power of any of the several States.

*And further*, Smith should be disbarred from the Alaska Bar Association.

*And further*, Smith should reimburse to Clugston of actual damages of $10,000.00.

*And further*, Smith should be liable for punitive damages in the amount of $100,000.00.

## Williams

*And further*, Williams, who is impersonating a public Officer of the State of Alaska, and a executive Officer of one of the several States is in violation of Article VI of the Constitution of the United States, 1 Stat 23, and the Constitution of Alaska Article XII section 5 with no Oath of Office as  public Officer to the "Constitution of the United States" should be immediately

impeached or fired, and removed from Williams' purported Office.

*And further*, as Williams is not a public Officer of the State of Alaska and a executive Officer with a Civil Commission lawfully and legally appointing him to an Office of one of the several States, Williams should be immediately impeached or fired, and removed from Williams' purported Office.

*And further*, all of Williams's purported Briefs and other issues submitted into Smith's Court or to other entities in this instant Case in the State of Alaska should be vacated and ruled void, as Williams was not exercising the executive Power of any one of the several States.

*And further*, Williams should be disbarred from the Alaska Bar Association.

*And further*, Williams should reimburse to Clugston of actual damages of $10,000.00.

*And further*, Williams should be liable for punitive damages in the amount of $100,000.00.

### King

*And further*, King, who is impersonating a public Officer of the State of Alaska, and a executive Officer of one of the several States is in violation of Article VI of the Constitution of the United States, 1 Stat 23, and the Constitution of Alaska Article XII section 5 with no Oath of Office as public Officer to the "Constitution of the United States" should be immediately impeached or fired, and removed from King's purported Office.

*And further*, as King is not a public Officer of the State of Alaska and a executive Officer with a Civil Commission lawfully and legally appointing him to an Office of one of the several States, King should be immediately impeached or fired, and removed from King's purported Office.

*And further*, all of King's purported documents and other issues submitted into Smith's Court or other entities in this instant Case in the State of Alaska should be vacated and ruled void, as King was not exercising the executive Power of any one of the several States.

*And further*, King should reimburse to Clugston of actual damages of $10,000.00.

*And further*, King should be liable for punitive damages in the amount of $100,000.00.

### Romero

*And further*, Romero, who is impersonating a public Officer of the State of Alaska, and a executive Officer of one of the several States is in violation of Article VI of the Constitution of the United States, 1 Stat 23, and the Constitution of Alaska Article XII section 5 with no Oath of Office as public Officer to the "Constitution of the United States" should be immediately impeached or fired, and removed from Romero's purported Office.

*And further*, as Romero is not a public Officer of the State of Alaska and a executive Officer with a Civil Commission lawfully and legally appointing him to an Office of one of the several States, Romero should be immediately impeached or fired, and removed from Romero's purported Office.

*And further*, all of Romero's purported documents and other issues submitted into Smith's Court or other entities in this instant Case in the State of Alaska should be vacated and ruled void, as Romero was not exercising the executive Power of any one of the several States.

*And further*, Romero should reimburse to Clugston of actual damages of $10,000.00.

*And further*, Romero should be liable for punitive damages in the amount of $100,000.00.

### Hollenbeck

*And further*, Hollenbeck, who is impersonating a public Officer of the State of Alaska,

and a executive Officer of one of the several States is in violation of Article VI of the Constitution of the United States, 1 Stat 23, and the Constitution of Alaska Article XII section 5 with no Oath of Office as public Officer to the "Constitution of the United States" should be immediately impeached or fired, and removed from Hollenbeck's purported Office.

*And further*, as Hollenbeck is not a public Officer of the State of Alaska and a executive Officer with a Civil Commission lawfully and legally appointing him to an Office of one of the several States, Hollenbeck should be immediately impeached or fired, and removed from Hollenbeck's purported Office.

*And further*, all of Hollenbeck's purported documents and other issues submitted into Smith's Court or other entities in this instant Case in the State of Alaska should be vacated and ruled void, as Hollenbeck was not exercising the executive Power of any one of the several States.

*And further*, Hollenbeck should reimburse to Clugston of actual damages of $10,000.00.

*And further*, Hollenbeck should be liable for punitive damages in the amount of $100,000.00.

### Langham

*And further*, Langham should be estopped from filing in the future into any agency or government for any assistance that would in any way obligate or give the appearance of creating an obligation upon Clugston.

My Hand,

Leon Ceene Clugston