DAVID W. MÁRQUEZ
ATTORNEY GENERAL
Megan R. Webb
Assistant Attorney General
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Phone:  (907) 269-5234
Fax:  (907) 279-2834

Attorney for Eric Smith, D. Kevin Williams,
Rachel King, Richard Romero, and Ray Hollenbeck

| | | |
|---|---|---|
| Leon Gene Clugston, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Eric Smith, individual capacity, | ) | |
| Kevin D. Williams, individual capacity, | ) | *Defendants Eric Smith, D. Kevin* |
| Rachel King, individual capacity, | ) | *Williams, Rachael King, Richard* |
| Richard Romero, individual capacity, | ) | *Romero, and Ray Hollenbeck's* |
| Ray A. Hollenbeck, individual capacity, | ) | *Memorandum in Support of Motion* |
| Crystal Dawn Langham, individual capacity, | ) | *to Dismiss Pursuant* |
| | ) | *to F.R.C.P. 12(B)(1) and (6)* |
| Defendants. | ) | |
| _____ | ) | Case No. 3:06-CV-00140 (TMB) |

## I.    INTRODUCTION

This case involves a dispute over child custody and child support orders

entered by Alaska Superior Court Judge Eric Smith.  The plaintiff, Leon Clugston,

challenges Judge Smith's authority to enter such orders, as well as the authority of three

State of Alaska, Child Support Services Division ("CSSD") employees -- Rachel King,

Richard Romero, and Ray Hollenbeck -- and CSSD's attorney in the state court

proceedings -- D. Kevin Williams -- to implement or enforce Judge Smith's orders.

Defendants Smith, Williams, King, Romero, and Hollenbeck ("defendants") hereby

move the court to dismiss the complaint pursuant to Federal Rule of Civil

1   Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to

2   state a claim for which relief can be granted.

3   **II.     FACTS AND PROCEEDINGS**

4           In October 2003, Mr. Clugston initiated a civil custody case in state

5   superior court against defendant Crystal Langham, seeking primary custody of their

6   son.  They eventually agreed to share custody under a week-on, week-off plan.  In

7   September 2004, the superior court issued an order to that effect.  Based on financial

8   information provided by the parents, in October 2004, it issued an order requiring Mr.

9   Clugston to pay $274 per month in child support.  Mr. Clugston asked the superior court

10  to reconsider, arguing that Alaska Rule of Civil Procedure 90.3 was unconstitutional.

11  After the trial court denied this request, Mr. Clugston appealed to the Alaska Supreme

12  Court, asserting that the superior court should have held an evidentiary hearing

13  regarding whether Ms. Langham was voluntarily under-employed and that Alaska Rule

14  of Civil Procedure 90.3 was unconstitutional.  The Alaska Supreme Court affirmed the

15  superior court's order, held that Alaska Rule of Civil Procedure 90.3 was not

16  unconstitutional, and indicated that the superior court made a clerical error in entering

17  the child support order.  *See Clugston v. Langham*, 2005 WL 3006567 (Alaska 2005).

18

19          When the case returned to the superior court, Ms. Langham requested

20  that it correct the clerical error and enter a higher level of child support.  *See* Complaint,

21  Attachment 15, pp. 9-10.  CSSD, through counsel, also asked the superior court to

22  correct a clerical error, namely to identify Mr. Clugston as the "obligor" on the child

23  support order since this information had been inadvertently omitted.  *See* Complaint,

24  Attachment 25.  Mr. Clugston sought dismissal of CSSD's motion.  *See* Complaint,

25  Attachments 15, p. 11.  The superior court granted both Ms. Langham's request

Memorandum                                                      Page 2 of 15
*Clugston v. Smith,*
3:06-CV-000140 (TMB)

(increasing the monthly obligation to $386.60) and CSSD's request (identifying Mr. Clugston as the "obligor), and it denied Mr. Clugston's motion for dismissal. *See* Complaint, Attachment 15, pp. 9-12 & Attachment 29. In doing so, it rejected Mr. Clugston's arguments that CSSD did not have standing, that CSSD's motions were invalid, that the court was unconstitutionally taking his property, and that he was being denied due process. *See* Complaint, Attachment 15, pp. 11-12.

Mr. Clugston then filed this complaint and request for injunction in U.S. District Court asking this court to vacate Judge Smith's orders in the state custody case, to strike CSSD's motionwork from the state court file, to impeach and remove Judge Smith from office, to terminate Mr. Williams', Ms. King's, Mr. Romero's, and Mr. Hollenbeck's employment with the State of Alaska, to disbar Judge Smith and Mr. Williams, and to award him compensatory and punitive damages.

## III.    STANDARD OF REVIEW

Defendants seek dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of jurisdiction and failure to state a claim for which relief may be granted.

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss for lack of subject-matter jurisdiction may attack either the allegations of the complaint as insufficient to confer subject-matter jurisdiction or attack the existence of subject-matter jurisdiction in fact. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When a motion to dismiss attacks the allegations of the complaint as insufficient to confer subject-matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

When the motion to dismiss is a factual attack on subject-matter jurisdiction, no presumptive truthfulness attaches to the plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject-matter jurisdiction in fact. *Thornhill*, 594 F.2d at 733; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed as a matter of law if it fails to allege sufficient facts to sustain a claim under a cognizable legal theory. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-534 (9th Cir. 1984). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Argabright v. United States*, 35 F.3d 472, 474 (9th Cir. 1994). Dismissal is also appropriate where an affirmative defense appears clearly on the face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980).

For purposes of a motion to dismiss for failure to state a claim, all allegations of the non-moving party are taken as true, and the court must construe the complaint in the light most favorable to the non-moving party. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997); *Argabright*, 35 F.3d at 474. However, on a motion to dismiss for lack of subject-matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's jurisdictional allegations when such allegations are not intertwined with the merits. *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987). Moreover, the court "is not

1  required to accept legal conclusions cast in the form of factual allegations if those

2  conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult*

3  *Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

4  **IV.    ARGUMENT**

5          **A.    The *Rooker-Feldman* Doctrine Precludes Federal District Court**
               **Appellate Review of a State Court Decision.**

6

7               Mr. Clugston asks this court to vacate state court orders modifying his

8  child support obligation and to strike various documents contained in the state court

9  record. *See* Complaint, pp. 29-31, 91-94. This court does not have subject-matter

10 jurisdiction and, based on the *Rooker-Feldman* doctrine, should grant defendants'

11 motion to dismiss.

12              Under the *Rooker-Feldman* doctrine, "[t]he United States District Court,

13 as a court of original jurisdiction, has no authority to review the final determinations of

14 a state court in judicial proceedings. 28 U.S.C. § 1257 provides that the proper court in

15 which to obtain such review is the United States Supreme Court." *Worldwide Church*

16 *of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986) (citing *District of Columbia Court*

17 *of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)). Thus, a party who is disappointed

18 with a state court order should seek review through the state's appellate court or the

19 United States Supreme Court, not through a federal district court.

20              Although *Rooker-Feldman* does not preclude district court jurisdiction

21 over a general constitutional challenge, if the constitutional claim is "inextricably

22 intertwined" with an issue resolved by the state court, the federal district court will also

23

24 be precluded from considering it. *Feldman*, 460 U.S. at 483 n.16; *Worldwide Church of*

25 *God*, 805 F.2d at 891. This occurs because "the district court is in essence being called

1  upon to review the state court decision[, which] the district court may not do."

2  *Feldman*, 460 U.S. at 483 n.16.  Thus, "[w]here the district court must hold that the

3  state court was wrong in order to find in favor of the plaintiff, the issues presented to

4  both courts are inextricably intertwined."  *Doe & Associates Law Offices v. Napolitano*,

5  252 F.3d 1026, 1030 (9th Cir. 2001).

6           Mr. Clugston challenges the validity of several state court orders, some

7  of which have already been reviewed by the Alaska Supreme Court.  *See Clugston*,

8  2005 WL 3006567 (affirming the September 9, 2004 order and holding that Alaska

9  Rule of Civil Procedure 90.3 was constitutional); Complaint, pp. 42-46.  For instance,

10  he alleges that the state court order modifying his child support obligation voided the

11  agreement he had with Ms. Langham.  *See* Complaint, pp. 42, 49.  The propriety of such

12  an order in light of the parents' agreement was fully litigated in the state court, and the

13  state court rejected Mr. Clugston's argument.  *See* Complaint, Attachments 11-12.

14  Under an alternative theory for voiding the state court order, Mr. Clugston objects to

15  Mr. Williams' alleged conduct during his representation of CSSD; this also was

16  litigated and the state court found against Mr. Clugston.  *See* Complaint, pp. 49-50,

17  Attachment 15, pp. 10-11, & Attachments 25-27.  Similarly, Mr. Clugston raises

18  constitutional claims that were litigated in state court, including his assertion that an

19  increase in his monthly obligation would constitute an unconstitutional taking, act as an

20  impermissible "threat and coercion," and would deny "his right to pursue happiness,

21  pursue the fruits of his labor and Due Process of the Law."  Complaint, pp. 43, 58, 85-

22  91, & Attachment 15, pp. 11-12.  The state court considered and rejected each of these

23  arguments as well.  *See* Complaint, Attachment 15, pp. 11-12.  Under the *Rooker-*

*Feldman* doctrine, this court does not have jurisdiction to review any of these state court decisions. *See Worldwide Church of God*, 805 F.2d at 890.

In addition to claims already litigated and lost in state court, Mr. Clugston asserts that he has been harmed as a result of the state court orders, *i.e.*, CSSD has placed a lien on his property, garnished his wages, and threatened to suspend his driver's license based on his non-compliance with the most recent child support orders. *See* Complaint, pp. 43-44, 58, 66, 74. Since this court could not find in Mr. Clugston's favor without ruling that the state court had erred, such claims are clearly "inextricably intertwined." *See Napolitano*, 252 F.3d at 1030. Therefore, this court cannot take jurisdiction over them.

It is clear from Mr. Clugston's complaint that the claims presented to this court are "inextricably intertwined" with the state court's child support orders. His causes of action mostly restate his argument that Judge Smith improperly modified his child support obligation, resulting in an illegal taking of his property or attempt to take his property and in the violation of his right to due process, and that Mr. Williams, Ms. King, Mr. Romero, and Mr. Hollenbeck did not have the authority to act upon Judge Smith's orders. *See* Complaint, pp. 29-31. Since the *Rooker-Feldman* doctrine applies to preclude federal district court jurisdiction over all such claims, defendants ask the court to dismiss the complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

**B.     Mr. Clugston's Requested Relief Falls Outside the Court's Authority.**

Even if this court should decide that Mr. Clugston's complaint is not inextricably intertwined with his state child support case, it should nevertheless dismiss

1    the action.  Mr. Clugston asks the court to remove Judge Smith from his office, to

2    disbar Judge Smith and Mr. Williams, and to terminate Mr. Williams', Ms. King's, Mr.

3    Romero's, and Mr. Hollenbeck's employment.  *See* Complaint, pp. 91-94.  Such

4    remedies fall outside the scope of the court's jurisdiction.

5            The Alaska Supreme Court possesses the authority to discipline state

6    court judges and attorneys licensed to practice in Alaska; the Alaska Legislature has the

7    authority to impeach state court judges and state civil officers; and the State of Alaska

8    has the authority to discipline its employees.  *See* Alaska Constitution, Art. II, § 20 and

9    Art. IV, § 12 (impeachment);  *In re Hanson*, 532 P.2d 303, 309 (Alaska 1975) (under

10   article IV, § 10 of the Alaska Constitution and AS 22.30.070(c), the Alaska Supreme

11   Court is the entity "entrusted with the ultimate dispositive decision in a judicial

12   qualifications matter"); *Weaver v. Superior Ct., Third Judicial Dist.*, 572 P.2d 425, 432

13   (Alaska 1977) ("we hold that the trial courts do not have authority to suspend attorneys

14   from practice.  Only this court may impose such a disciplinary measure in an exercise of

15   its supervisory power over the Bar in this state.").  This authority does not rest with the

16

17   U.S. District Court.

18           Under the circumstances, the court should dismiss the complaint for lack

19   of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

20
         **C.    Mr. Clugston's Complaint Fails to State a Claim Under Which
21              Relief may be Granted.**

22           In addition, this court should dismiss the complaint because the facts

23   alleged do not entitle Mr. Clugston to relief under a viable legal theory.  Mr. Clugston

24   alleges that defendants unlawfully are implementing and enforcing a bill of attainder

25   against him.  *See* Complaint, pp. 30-31, 45, 84-89.  He asserts that the child-support

1   modification orders, Alaska Rule of Civil Procedure 90.3, and various letters and

2   notices sent by CSSD are bills of attainder, *e.g.*, Attachments 13-14, 19-24, 31.  *See*

3   Complaint, pp. 30-31, 45, 84-89.  To the extent that Mr. Clugston relies on these items,

4   his claims fail as a matter of law.

5           Under Article I, section 10 of the United States Constitution, "[n]o state

6   shall . . . pass any bill of attainder[.]"  A bill of attainder is "a law that legislatively

7   determines guilt and inflicts punishment upon an identifiable individual without

8   provision of the protections of a judicial trial."  *Seariver Mar. Fin. Holdings v. Mineta*,

9   309 F.3d 662, 668 (9th Cir. 2002) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S.

10  425, 468 (1977)).  In other words, it is a restriction on legislative authority, not judicial.

11  *See id.* (noting that while Article III places limitations on the judicial branch, the Bill of

12  Attainder Clause places them on the legislative branch).

13          Under this definition, Judge Smith's orders in the state civil custody case

14  do not constitute bills of attainder.  Nor does Alaska Rule of Civil Procedure 90.3.  Nor

15  do the CSSD letters and notices, which were sent either to Mr. Clugston or to third

16  parties as a result of Judge Smith's orders.  Since none of these documents constitute

17  bills of attainder, Mr. Clugston is not entitled to the requested relief.

18          Mr. Clugston's complaint may also be interpreted as asserting that

19  AS 25.27.246, which grants CSSD the authority to suspend an individual's driver's

20  license for nonpayment of child support, is a bill of attainder.  *See* Complaint, p. 43, 88.

21  However, such a claim also would fail as a matter of law.

22          The Ninth Circuit Court of Appeals has recognized that a bill of attainder

23  does not exist simply "because the Act imposes burdensome consequences" on an

individual.  *Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*, 965 F.2d 723, 727 (9th

Cir. 1992); *see also United States v. Munsterman*, 177 F.3d 1139, 1142 (9th Cir. 1999)

("not every law the effect of which is to disable some persons or groups is a bill of

attainder").  Instead, the relevant inquiry is whether the statute "(1) specifies the

affected persons, and (2) inflicts punishment (3) without a judicial trial."  *Seariver

Maritime*, 309 F.3d at 668.  Because a statute is presumed to be constitutional, "[o]nly

the clearest proof suffices to establish the unconstitutionality of a statute as a bill of

attainder."  *Id.* at 669.

        In order to determine whether a statute impermissibly specifies a person

or group of persons, the court should consider how "the class is designated and what

purposes the law furthers."  *Munsterman*, 177 F.3d at 142.  More specifically, if the

relevant statute:

> designates a properly general characteristic . . . and then
> imposes upon all who have that characteristic a
> prophylactic measure reasonably calculated to achieve a
> nonpunitive purpose, no attainder may be said to have
> resulted form the mere fact that the set of persons having
> the characteristic in question might in theory be
> enumerated in advance and that the set is in principle
> knowable at the time the law is passed.

*Id.* (quoting Laurence H. Tribe, *American Constitutional Law* § 10-4 at 643 (2d ed.

1988).

        Alaska Statute 25.27.246 relies on a general characteristic -- delinquent

child support obligors.  *State, Dep't of Revenue, Child Support Enforcement Div. v.

Beans*, 965 P.2d 725, 726 (Alaska 1998).  It does not name a specific person or group of

persons.  *Cf. United States v. Brown*, 381 U.S. 437, 440 (1965) (law making it a crime

for members of the Communist Party to serve as labor union officers was an

1  unconstitutional bill of attainder); *Selective Serv. Sys. v. Minnesota Pub. Interest*

2  *Research Grp.*, 468 U.S. 841, 849-51 (1984) (law under which financial aid for higher

3  education could be denied to individuals who were required to but did not register for

4  the draft lacked requisite specificity to constitute bill of attainder).

5         Moreover, as the Alaska Supreme Court has recognized, AS 25.27.246

6  serves a legitimate public policy in that "the State needs to collect child support from all

7  obligors, whether they are subject to income withholding or not." *Beans*, 965 P.2d at

8  727.  The ability to suspend a delinquent obligor's driver's license, or to threaten to

9  suspend a license, "is a particularly effective enforcement tool against those obligors

10  who resist income withholding." *Id.*  Moreover, this enforcement tool is nonpunitive in

11  nature and permits the delinquent obligor to remedy the situation through self-action

12  (payment of arrearages) or to seek administrative and judicial review of CSSD's

13  actions.  *Id.* at 730-31 & n. 8 (noting that the suspension is "not to punish [the obligor]

14  for past misconduct" but to coerce them into meeting a prior obligation).  Under the

15  circumstances, AS 25.27.246 does not constitute a bill of attainder.

16

17         Because there is no legal basis to sustain the claim that defendants have

18  violated Mr. Clugston's rights through implementation or enforcement of a bill of

19  attainder, this court should dismiss the complaint for failure to state a claim upon which

20  relief can be granted.

21         **D.        The Claims Against Judge Smith are Barred by Judicial Immunity.**

22         Finally, the claims against Judge Smith should be dismissed as they are

23  barred by the doctrine of judicial immunity.  Assuming for purposes of argument that

24  the conduct alleged in the complaint is true, all of Judge Smith's alleged conduct

25  constitutes judicial acts taken within the state court's jurisdiction and were intrinsically

Memorandum                                                          Page 11 of 15
*Clugston v. Smith,*
3:06-CV-000140 (TMB)

1  judicial functions.  Although Mr. Clugston believes that Judge Smith violated his

2  constitutional rights and state law, that does not alter the fact that the judge had

3  jurisdiction to preside over the state court proceedings and issue rulings in that matter.

4  As such, judicial immunity precludes all of the claims against Judge Smith, and these

5  claims should be dismissed as a matter of law.

6          Judicial immunity is a well-established doctrine in American

7  jurisprudence.  *Owen v. City of Independence*, 445 U.S. 622, 637 (1980) ("few doctrines

8  were more solidly established at common law than the immunity of judges for liability

9  for acts committed within their judicial jurisdiction").  In order to determine whether a

10  judge enjoys immunity in a suit, the court should apply a two-part test:  (1) whether the

11  alleged acts were "judicial" in nature, and (2) whether the judge acted in the "clear

12  absence of all jurisdiction."  *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir.

13  1981) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57, 360-64 (1978)).

14

15          To determine whether a particular act is a "judicial" one, the court

16  considers "whether it is a function normally performed by a judge, and to the

17  expectation of the parties, *i.e.*, whether they dealt with the judge in his judicial

18  capacity.'"  *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986) (quoting *Stump*,

19  435 U.S. at 362).  Conducting court proceedings and making decisions about state and

20  federal law are clearly functions normally performed by a judicial officer.  Judge Smith

21  obviously acted in a strictly judicial capacity in the matters about which Mr. Clugston

22  complains.  Therefore, the first part of the immunity analysis is satisfied.

23          For the second part of the analysis, the United States Supreme Court has

24  employed a broad definition of the term "jurisdiction," abrogating immunity only where

25

Memorandum                                                                      Page 12 of 15
*Clugston v. Smith,*
3:06-CV-000140 (TMB)

a judge has acted in the "clear absence of jurisdiction," clearly beyond the scope of subject matter jurisdiction. *Ashelman*, 793 F.2d at 1075. "Jurisdiction should be broadly construed to effectuate the policies supporting immunity." *Id.* at 1076. As long as a judge has jurisdiction to perform the "general act" in question, that individual is immune no matter how erroneous the act, how injurious its consequences, and irrespective of the judge's motivation. *Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir. 2001) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).

In the matters about which Mr. Clugston complains, Judge Smith dealt with the litigants in his judicial capacity. Moreover, the state court clearly had subject-matter jurisdiction over the relevant proceedings. It is a matter of record that Judge Smith is an Alaska Superior Court judge and that the state superior court's jurisdiction includes civil matters, such as civil custody and child support cases. *See* AS 22.10.020. Therefore, the state court had subject-matter jurisdiction, and the second part of the immunity test is met.

As the Ninth Circuit Court of Appeals has noted, the "primary policy of extending immunity to judges and to prosecutors is to ensure independent and disinterested judicial and prosecutorial decision making. To effectuate this policy, we will broadly construe the scope of immunity." *Ashelman*, 793 F.2d at 1078 (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). This broad construction is essential because:

> what is won or lost often has great value to the litigants: the custody of children, compensation for serious injuries, freedom from physical restraint, or simply large sums of money. With such important issues at stake in an adversarial context, absolute immunity is needed to

1

forestall endless collateral attacks on judgments through
civil actions against the judges themselves.

2

*Parker v. State of Maryland*, 653 A.2d 436, 443 (Md. App. 1995) (citation omitted).

3

Given the breadth of this defense, all of the claims against Judge Smith should be

4

barred. *See Stump*, 435 U.S. at 359 ("A judge is absolutely immune from liability for

5

his judicial acts even if his exercise of authority is flawed by the commission of grave

6

procedural errors."); *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) ("judicial

7

immunity [is not] lost by allegations that a judge conspired with one party to rule

8

against another party"); *Parker*, 653 A.2d at 441-44 (absolute judicial immunity

9

"applies regardless of the nature of the tort and even where the suit against the judge

10

alleges that he acted in bad faith, maliciously and corruptly").

11

12

In short, "[a]s long as the judge's ultimate acts are judicial actions taken

13

within the court's subject matter jurisdiction, immunity applies." *Ashelman*, 793 F.2d at

14

1078. Thus, even if Judge Smith's actions were in error, were done maliciously or

15

intentionally, or were in excess of his authority -- none of which is the case here -- that

16

would not deprive him of immunity. As such, the court should dismiss all of the claims

17

against Judge Smith fail as a matter of law.

18

**CONCLUSION**

19

Based on the foregoing arguments, defendants request that the court

20

grant their motion and dismiss all claims against them.

21

22

23

24

25

DATED:  June 30, 2006.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By:
/s/ Megan R. Webb
Assistant Attorney General
Attorney General's Office
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
(907) 269-5234 (Phone)
(907) 279-2834 (Fax)
ope_ecf@law.state.ak.us
Alaska Bar No.  9811072

**CERTIFICATE OF SERVICE**

This is to certify that on June 30, 2006, a
true and correct copy of the
**DEFENDANTS ERIC SMITH, D.
KEVIN WILLIAMS, RACHEL KING,
RICHARD ROMERO, AND RAY
HOLLENBECK'S MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS
PURSUANT TO
F.R.C.P. 12(B)(1) AND (6)** in this
proceeding was served by first class U.S.
Mail on the following:

Leone Gene Clugston
4555 South Navigator Circle #7
Wasilla, Alaska  99654

Crystal Dawn Langham
PO Box 879468
Wasilla, Alaska  99687

/s/Megan R. Webb
Assistant Attorney General
Attorney for Eric Smith, D. Kevin Williams,
Rachel King, Richard Romero, and Ray Hollenbeck