

Leon Gene Clugston
4555 South Navigator Circle #7
Wasilla, Alaska [99654]
907-357-1093
Without Assistance of Counsel

# The United States of America

# The United States

# District of Alaska

# District Court of the United States

**Leon Gene Clugston**

Plaintiff

*Versus.*

**Eric Smith, individual capacity (personal capacity); and
Kevin D. Williams, individually (personal capacity); and,
Rachel King, individually (personal capacity); and,
Richard Romero, individually (personal capacity); and,
Ray A. Hollenbeck, individually (personal capacity); and,
Crystal Dawn Langham, individually (personal capacity); and,
John Does 1-20**

Defendants

**Case 3:06-cv-00140-JWS**

**Opposition to MOTION TO DISMISS**

*Come now,* Leon Gene Clugston ("Clugston") with this Opposition to MOTION TO

DISMISS (hereafter "Motion").   Clugston's opposition to Megan R. Webb's ("Webb") Motion

does not validate Webb's intervention into this instant Case, as Clugston has filed into *this* Court at Docket 11 with attachments that Webb has no executive Power and Duties as an executive Officer of any of the several States to represent any of the Defendants. The Defendants were sued in their personal capacities only. This opposition is a matter of necessity under the Law of Necessity, and doesn't open the door to any of the Defendants or validate Webb's Motion or Appearance.

### Complaint Should Not Be Dismissed

A complaint should not be dismissed unless it appears that Clugston can prove no set of facts in support consistent with the allegations which would entitle Clugston to relief and to presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of Clugston as held in the adjudged decision of the Supreme Court of the United States in *Illinois ex rel. Madigan v. Telemarketing Assoc. Inc.*, 538 U.S. 600, 618 (2003). See also *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartford Fire Ins. Co. v.* California, 509 U.S. 764, 811 (1993); *McLain v. Real Estate Bd. Of New Orleans, Inc.,* 444 U.S. 232, 246 (1980); United *States v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004); *Jenkins v. McKeithen*, 395 U.S. 411, , 421, 422 (1969); *Kinney v. International Broth. Of Elec. Workers*, 669 F.2d 1222, 1230 (9th Cir. 1222); *Alameda Conservation Ass'n v. State of Cal.*, 437 U.S. 1087, 1094 (9th Cir. 1971); *Knappick v. United States*, 875 F.2d 318, 318 (9th Cir. 1989); *Brothers v. First Leasing*, 724 F.2d 789, 790 [FN1] (9th Cir. 1984); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).

A judge is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory as held in the adjudged decision of *Bonner v. Circuit Court of*

*City of St. Louis, Mo.,* 526 F.2d 1331, 1334 (8th Cir. 1976); *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974).

The courts have never decided that those enjoying judicial immunity from damage suits are similarly immune form suits seeking equitable and injunctive relief as held in *Bonner v. Circuit Court of City of St. Louis, Mo.,* 526 F.2d 1331, 1334 (8th Cir. 1976) citing *O'Shea v. Littleton*, 414 U.S. 488 (1974).

Clugston has submitted Offers of Proof of public records as Attachments to which the Webb remains *sub silentio* and remain unrebutted. *Sub silentio* does not transmogrify the ***absence of***, ***into the existence thereof***,  including, but limited to the following: no Office created by any of the several States of any of the Defendants; and, no Oath of Office as either a judicial Officer of one of the several States (Smith) or executive Officer of one of the several States (Williams, King, Romero and Hollenbeck) as mandated by Article VI of the Constitution of the United States, 1 Stat 23 and Article XII section 5 of the Constitution of the State of Alaska to the "Constitution of the United States"; and, no executive Power or judicial Power of any of the several States vested in any of the Defendants; and, forcing Clugston to surrender all of his fundamental Rights to accept a potential federal benefit(s), being the Social Security System ("SSS") with a Social Security Number ("SSN") and state benefit(s), to which the Congress, all courts of the several States or courts of the United States or the legislature is not authorized or empowered under any constitution of any of the several States or the Constitution of the United States to force upon Clugston; and, no police Power of any of the several States or Congress can force and coerce Clugston into the Class of those who choose (probably unknowingly) to under their signature claim to be a "citizen of the United States" with the SSN attached thereto; and, force and coerce

Clugston by purported acts of the Congress by and through executive agencies to participate in "cooperative agreements" with agencies of the State for the pecuniary enrichment of those involved in the unlawful and illegal scheme.

### Courts Must Take Judicial Notice of Public Records

No formal introduction of the public records of rules and regulations are required and the courts of the United States are to take judicial notice. This holding is found in the adjudged decision of *Caha v. United States*, 152 U.S. 211, 221, 222 (1894), to wit:

> But we are of opinion that there was no necessity for a formal introduction in evidence of such rules and regulations. They are matters of which courts of the United States take judicial notice.
> . . .
> [T]he rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice.

On judicial notice, see also *Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 488 (1943) and *The United States v. Heschmaker*, 63 U.S. 392, 405 (1859).

The courts are to give public acts ***legal effect***, and this is held in the adjudged decision of *Armstrong v. United States*, 80 U.S. 154, 156 (1871), to wit:

> This was a public act of which all courts of the United States are bound to take notice, and to which all courts are bound to give effect.

Regardless of whether the sovereign is *de jure* or *de facto,* determinations by the executive or legislative branch binds the judges, even if not formally put into evidence, and this is held in the adjudged decision of *Jones v. United States*, 137 U.S. 202, 212, 214 (1890), to wit:

> **Who is the sovereign, *de jure* or *de facto*, of a territory, is not a judicial, but a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges**, as well as all other officers, citizens, and subjects of that government. This principle has always been upheld by this court, and has been affirmed under a great variety of circumstances. Gelston v. Hoyt, 3 Wheat. 246, 324; U. S. v. Palmer, Id. 610; The Divina Pastora, 4 Wheat. 52; Foster v. Neilson, 2 Pet. 253, 307, 309; Keene v. McDonough, 8 Pet. 308; **84Garcia v. Lee, 12 Pet. 511, 520; Williams v. Insurance Co., 13 Pet. 415; U. S. v. Yorba, 1 Wall. 412, 423; U. S. v. Lynde, 11 Wall. 632, 638.
> * * *

**All courts of justice are bound to take judicial notice of the territorial extent of the jurisdiction exercised by the government whose laws they administer,** or of its recognition or denial of the sovereignty of a foreign power, **as appearing from the public acts of the legislature and executive, although those acts are not formally put in evidence,** nor in accord with the pleadings.  U. S. v. Reynes, 9 How. 127; Kennett v. Chambers, 14 How. 38; Hoyt v. Russell, 117 U. S. 401, 404, 6 Sup. Ct. Rep. 881; Coffee v. Groover, 123 U. S. 1, 8 Sup. Ct. Rep. 1; State v. Dunwell, 3 R. I. 127; State v. Wagner, 61 Me. 178; Taylor v. Barclay, and Emperor of Austria v. Day, above cited; 1 Greenl. Ev. ß 6.  *[Emphasis added]*

Therefore, the Court shall take judicial Notice of all public records, adjudged decisions of

the all courts, and documents, whether cited in this specific document.

## Fact and Truth

In the adjudged decision of *Drake v. Cockroft*, 4 E.D.Smith, N.Y. 34, 37 (1855), to wit:

Indeed, the term **fact** and **truth** are often used in common parlance as synonymous; but, as employed in reference to pleading, they are widely different. **A fact in pleading is a circumstance, act, event, or incident--a truth is the legal principle which declares or governs the facts, and their operation and effects.**

Admitting the facts stated in a complaint, the *truth may be* that the plaintiff is not entitled, upon the face of his complaint, to what he claims. The mode in which a defendant sets up that truth for his protection, is a demurrer. **[Emphasis added]**

## Fact

In the adjudged decision of *Rost v. Kessler*, 49 N.Y.S.2d 97, 99 (1944), to wit:

In Fowler-Curtis Co. v. Dean, 203 App.Div. 317, at pages 320, 321, 196 N.Y.S. 750, the Court **defined the word 'fact':  'A fact, according to Webster, is 'a thing done; * * * an actual happening in time or space; any event, mental or physical.'  * * *'. [Emphasis added]**

## Ultimate Facts

In the adjudged decision of *People ex rel. Hudson & M.R. Co. v. Sexton*, 44 N.Y.S.2d

884, 885 (1943), to wit:

Up to now the Court of Appeals has held that there **are only two kinds of facts, which are ultimate facts and evidentiary facts.   The first is necessary and essential for any determination or decision by the court.  The second contains the facts necessary to prove the essential or ultimate facts.** The Court of Appeals **has forbidden the finding of evidentiary facts and has limited the courts below to the finding of ultimate facts.**  Godley v. Crandall & Godley Co., 212 N.Y. 121, 132, 105 N.E. 818, L.R.A.1915D, 632; Island Trading Co. v. Berg Bros., 239 N.Y. 229-233, 146 N.E. 345; Adler v. Metropolitan El. R. Co., 138 N.Y. 173, 178, 33 N.E. 935; Steubing v. New York Elevated R. Co., 138 N.Y. 658, 34 N.E. 369.  **[Emphasis added]**

In the adjudged decision of the Supreme Court of the United States of *Mining Company v. Taylor*, 100 U.S. 37, 42 (1879), to wit:

> Whether a special finding of facts by the court must have all the requisites of a special verdict, it is not necessary now to assert or deny, **for all that is essential to such a verdict is an ascertainment of the ultimate facts**. A jury is not to find evidence. **[Emphasis added]**

*Venire facias de* novo in the following adjudged decision of the Supreme Court of the United States in *Saltonstall v. Birtwell*, 150 U.S. 417, 419 (1893), to wit:

> We are unable, therefore, to direct judgment for either party. Insurance Co. v. Stark, 6 Cranch, 268, 273; **\*420** Harden v. Fisher, 1 Wheat. 300, 303; Barnes v. Williams, 11 Wheat. 415; McArthur v. Porter, 1 Pet. 627; Ex parte French, 91 U. S. 423; Ryan v. Carter, 93 U. S. 78, 81; Hodges v. Easton, 106 U. S. 408, 411, 1 Sup. Ct. 307; Ft. Scott v. Hickman, 112 U. S. 150, 165, 5 Sup. Ct. 56; Spring Works Co. v. Spalding, 116 U. S. 541, 545, 546, 6 Sup. Ct. 498; Allen v. Bank, 120 U. S. 20, 30, 40, 7 Sup. Ct. 460; Raimond v. Terrebonne Parish, 132 U. S. 192, 10 Sup. Ct. 57; Lloyd v. McWilliams, 137 U. S. 576, 11 Sup. Ct. 173

On the issue of *venire facias de novo* concerning a verdict when it is so imperfect or ambiguous that no judgment can be given upon it, or where a judgment is reversed on error, and a new trial awarded – See *Insurance Co. v. Stark*, 6 Cranch 268, 273;  *Harden v. Fisher*, 1 Wheat 300, 303;  *Barnes v. Williams*, 11 Wheat 415.

### Truth

Truth is defined in the adjudged decision of *Memphis Telephone Co. V. Cumberland Telephone & Telegraph Col,* 231 F. 835, 842 (1916), to wit:

> There are three conceptions as to what truth is.    Agreement of thought and reality, eventual **verification** and consistency of thought with itself. **[Emphasis added]**

### Evidence

In the adjudged decision of *Hotchkiss v. Newton*, 10 Ga. 567, 1851, to wit:

> What is evidence? It is the means by which any fact which is put in issue, is established or disproved.

### Fact and Law

Law is a principle; fact is an event. Law is conceived; fact is actual. See Blacks 5th Ed.

1979; *Bonner v. State*, 406 A.2d 646, 651 (1979).

As held in *DeMars v. Carlstrom*, 948 P.2d 246, 249 (1997) citing Blacks Law Dictionary

6th Edition, to wit:

> A "fact," as distinguished from the "law," may be taken as that out of which the point of law
> arises, that which is asserted to be or not to be, and is to be presumed or proved to be or not to be
> for the purpose of applying or refusing to apply a rule of law. Law is principle; fact is an event.
> Law is conceived; fact is actual. Law is rule of duty; fact is that which has been according to or in
> contravention of the rule. Black's Law Dictionary 592 (6th ed. 1990) (citation omitted).

See also *Michak v. Transnation Title Ins. Co.*, 64 P.3d 22, 28 (2003).

As held in *In re Cable & Wireless, PLC*, 321 F.Supp.2d 749, 761 (2004) concerning

facts, where the statutory language is plain and unambiguous, further inquiry is not required.

### Webb Admits that Rachel King, Richard Romero and Ray Hollenbeck are Employees

As only executive Officers of any of the several States can exercise any executive Power

of the State of Alaska over Clugston, ***Webb admits under her signature*** that Rachel King

("King"), Richard Romero ("Romero"), and Ray Hollenbeck ("Hollenbeck") are ***mere employees***,

***therefore to exclusion*** of being executive Officersof any of the several States, i.e. public Officers

of any of the several States exercising any part of the sovereignty of any of the several States.

Absent is any reference to the Eric Smith ("Smith") and Kevin Williams ("Williams") as

mere employees. But of course, Smith and Williams have "Employee Affidavits", and Clugston

submits as an Offer of Proof that Smith is mere employee of the Alaska Court System, which has

no legal existence, as a "Superior Court Judge" under his signature that was personally

documented by Stephen Collier, a Notary Public of the State of Alaska being **Attachment 1**. It

is incontrovertible that Smith is just a mere employee unless Smith committed perjury by filing in

a false document into the State of Alaska public records under his signature. This is extreme bad

faith on behalf of Webb in an attempt to mislead the Court by remaining *sub silentio*.

### Silence is Fraud Where There is a Legal Duty to Answer

Silence is fraud where there is a legal duty to speak or an unanswered inquiry left

unanswered is intentionally misleading as held in the *United States v. Tweel*, 550 F.2d 297, 299

(5th Cir. 1977) quoting *U.S. v. Prudden*, 424 F.2d 1021, 1033 (5th Cir. 1970) *Cert denied*, to wit:

> Therefore, the record here must disclose some affirmative misrepresentation to establish the
> existence of fraud, and the showing must be clear and convincing.
> * * *
> Silence can only be equated with fraud where there is a **legal** or moral **duty** to speak or where an
> inquiry left unanswered would be intentionally misleading.
> * * *
> The **silent misrepresentation was both intentionally misleading and material**. *[Emphasis
> added]*

See also *U.S. v. Peters*, 944 F.Supp. 646, 655-56 (N.D. Ill 1996); *U.S. v. Mitchell*, 763

F.Supp 1262, 1268 (D.C. Vt. 1991); *Jones v. C.I.R.*, Tax Ct. Rep. (CCH) 47 (1991).

In the adjudged decision of Supreme Court of Virginia citing the 9th Circuit in *Virginia*

*Dept Of Labor and Industry v. Clore Sons, Inc.*, 281 S.E. 2d 901, 904 (1981), to wit:

> Silence, however, cannot constitute fraud or misrepresentation unless "there is a legal or moral
> duty to speak or where an inquiry left unanswered would be intentionally misleading. *United
> States v. Robson*, 477 F.2d 13, 18 (9th Cir. 1973) "

Absent in Webb's Motion is any reference to Smith has being a judicial Officer of the

any of the several States exercising any judicial Power of any of the several States. Also absent

is any reference to Williams, King, Romero and Hollenbeck being executive Officers of any of

the several States exercising any executive Power of any of the several States.

### Civil Commission Is Evidence of Signature of Appointment

A civil commission issued under the signature of the person authorized and empowered

to make the appointment and under public seal for the public office is the evidence of the

Appointment, being the signature of person authorized and empowered to Appoint.

This is held in the adjudged decision of the Supreme Court of the United States in *United States v. Le Baron,* 60 U.S. 73, 78 (1856), to wit:

> **"When a person has been nominated to an office by the President, confirmed by the Senate, and his commission has been signed by the President, and the seal of the United States affixed thereto, his appointment to that office is complete**.  Congress may provide, as it has done in this case, that certain acts shall be done by the appointee before he shall enter on the possession of the office under his appointment.  These acts then become conditions precedent to the complete investiture of the office; but they are to be performed by the appointee, not by the Executive; all that the Executive can do to invest the person with his office has been completed when the commission has been signed and sealed; and when the person has performed the required conditions, his title to enter on the possession of the office is also complete." *[Emphasis added]*

This is also held in the adjudged decision of the Supreme Court of the United States in *Marbury v Madison,* 5 US 137, 157 (1803), to wit:

> This is an appointment by the President, by and with the advice and consent of the senate, and is evidenced by no act but the commission itself.  In such a case therefore the **commission and the appointment seem inseparable**; it being almost impossible to show an appointment otherwise than by proving the existence of a commission; still the commission is not necessarily the appointment; **though conclusive evidence of it.**

In the adjudged decision of the Supreme Court of the United States of *Ryder v. United States,* 515 U.S. 177 (1995), Clugston has a right to do a direct challenge to the appointment of public officers before the final judgment to see if there has been a trespass upon the executive power of appointment, the assure that it preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power, and this being a basic constitutional protection designed in part for the benefit of litigants and citizens of the United States of America.

This is a direct challenge to lawful appointment of a judicial Officer of any of the several States and a direct challenge to the Oath of Office of a judicial Officer of any of the several States. This direct challenge is timely and not a collateral attack.  This direct challenge is not frivolous, Clugston has fundament rights secured in the organic Constitution of the United States of 1789 and the Bill of Rights as lawfully amended by the qualified Electors of the several States, the Laws of the United States made there under.

In the adjudged decision of *Ryder v. United States,* 515 U.S. 177, 182, 183 (1995) we find the following:

[2] In the case before us, petitioner challenged the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review.    Unlike the defendants in *Ball, McDowell,* and *Ward,* petitioner raised his objection to the judges' titles before those very judges and prior to their action on his case.    And his claim is based on the Appointments Clause of Article II of the Constitution--a claim that there *has* been a **"trespass upon the executive power of appointment,"** *McDowell, supra,* at 598, 16 S.Ct., at 112, rather than a misapplication of a statute providing for the assignment of already appointed judges to serve in other districts.

[3][4] In *Buckley v. Valeo, supra,* at 125, 96 S.Ct., at 685, we said   "[t]he Appointments Clause could, of course, be read as merely dealing with etiquette or protocol in describing 'Officers of the United States' but the drafters had a less frivolous purpose in mind."    The Clause is a bulwark against one branch aggrandizing its power at the expense of another branch, but it is more:   it **"preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power."** *Freytag v. Commissioner,* 501 U.S. 868, 878, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991). In *Glidden Co. v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), we declined to invoke the *de facto* officer doctrine in order to avoid deciding a question arising under Article III of the Constitution, saying that the cases in which we had relied on that doctrine did not involve **"basic constitutional protections designed in part for the benefit of litigants."** *Id.,* at 536, 82 S.Ct., at 1465 (plurality opinion).   **We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred.    Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments. [Emphasis added]**

The Court shall take mandatory judicial Notice of the adjudged decisions of the Supreme Court of the United States being, *Ryder v. United States,* 515 U.S. 177, (1995), *Freytag v. Commissioner,* 501 U.S. 868 (1991), and *Glidden Co. v. Zdanok,* 370 U.S. 530, (1962).

As it is clearly explained and held that the *quo warranto* and *de facto* doctrine are in reality a way to deny a citizen of the United States of America, i.e. a citizen of any of the several States a remedy and to insure that the public officers, i.e., judicial Officers, are indeed qualified as required by the Constitution.    And further it does not require a litigant to perform any particular ritual to do a direct challenge.    In the adjudged decision of United States Court of Appeals in the District of Columbia in *Andrade v. Lauer,* 729 F. 2d 1475, 1496, 1497 (1983), to wit:

The core purposes of the doctrine are served if a plaintiff challenging government action on the ground that the officials taking that action improperly hold office meets two requirements. **First, the plaintiff must bring his action at or around the time that the challenged government action is taken.   Second, the plaintiff must show that the agency or department involved has had reasonable notice under all the circumstances of the claimed defect in the official's title to office.   This does not require that the plaintiff perform any particular rituals before bringing suit, nor does it mandate that the agency's knowledge of the alleged defect must come from the plaintiff.   It does, however, require that the agency or department involved actually knows of the claimed defect.**

n39 Adjudicating a challenge to an action taken by a government official on the ground that the official invalidly holds office has substantial support in the case law.   **Both the Supreme Court**

and lower federal courts have adjudicated challenges in a number of cases that would have been barred by the traditional form of the de facto officer doctrine. *See, e.g., Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 39 L. Ed. 2d 630, 94 S. Ct. 1323 (1974)* (challenge to appointment of Nominating Panel for Philadelphia School Board, in which plaintiffs sought to have actions taken by panel overturned); *Glidden Co. v. Zdanok, 370 U.S. 530, 8 L. Ed. 2d 671, 82 S. Ct. 1459 (1962)* (adjudicating challenge to conviction on ground that the judge allegedly did not hold office validly under Article III of the Constitution); *United States v. Woodley, 726 F.2d 1328 (9th Cir. 1983)* (adjudicating challenge to sentence on ground that recess appointment of judge was invalid); *Horn v. United States, 230 Ct. Cl. 18, 671 F.2d 1328, 1331 (Ct. Cl. 1982)* (adjudicating challenge to Army officer's failure to get promotion on ground that review board included ineligible officers); *cf. United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 97 L. Ed. 54, 73 S. Ct. 67 (1952)* (defect in hearing examiner's appointment would invalidate a resulting order if objection were made at time of hearing). **[Emphasis added]**

Smith as evidenced by **Attachment 4** of Docket 1 (Complaint/Injunction) has no Civil Commission under any signature of anyone of the several States and of course Webb does not address this issue, being *sub silentio..*

Williams, King, Romero and Hollenbeck have no Civil Commissions in any public forum that Clugston can locate and of course Webb does not address this issue, being *sub silentio.*

### Public Officer and Creation of an Office Requirements
### Public Officer versus mere Employee

In the adjudged decision of *State v. Hawkins*, 257 P. 411, 413-418 (Sup. Ct. Mont. 1927) is an exhaustive examination of what is required to be a "public Officer" in any of the several States and the requirements pertaining to the creation of an "Office" in any of the several States based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, and this holding is *ibid* at 418, to wit:

After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it **a public office of a civil nature:** (1) It **must be created by the Constitution or by the Legislature** or created by a municipality or other body through authority conferred by the Legislature; (2) it **must possess a delegation of a portion of the sovereign power of government,** to be exercised for the benefit of the public; (3) the **powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority;** (4) **the duties must be performed independently and without control of a superior power, other than the law,** unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it **must have some permanency and continuity,** and not be only temporary or occasional. In addition, in this state, **an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter is required by proper authority.** *[Emphasis added]*

This Court may not presume the existence that any of the Defendants are in fact either judicial Officers of the several States or executive Officers of the several States, *ibid* at 414, " . . . we may not presume he is an officer; it must be shown.  * * *  It must appear in the record" (citations omitted).

Another extensively researched case on "public Officer" and the requirement of the creation of an "Office" is *State v. Cole*,  148 P. 551, 552 *et seq.* (Sup. Ct. Nev. 1915) which is based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, held *ibid* at 552 an Office can't spring into existence spontaneously, but must be created, to wit:

> An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the Constitution, by legislative enactment, or by some municipal body, pursuant to authority delegated to it. "All public offices must originally have been created by the sovereign as the foundation of government."

In the adjudged decision in *Hawkins, supra.* at 415 citing the holding of *State v. Spaulding*, 72 N.W. 288, 291 (Sup. Ct. Iowa 1897),  the distinction of a "position", i.e. mere employee is explicated from an [public] officer, to wit:

> "A **position**, the **duties** of which * * * **can be changed at the will of the superior,** * * * is not an office, but a mere employment, and the incumbent is not an officer, but a **mere employee**." *[Emphasis added]*

And further, in the adjudged decision of *Hawkins, supra.*, at 417 explicating  when a "position" is created not by force of law, but by a ***contract of employment***, it isn't an "office",

> "When a position is created, not by force of law but by contract of employment, the employment does not rise to the dignity of an office."

A "public Officer" as distinguished from an "employee" must be invested by law with a portion of the state's sovereignty for the public benefit largely independent of the control of others and authorized to exercise functions either of executive, legislative, or judicial character.

See *State Ex rel. Newman v. Skinner*, 191 N.E. 127, 128 (Sup. Ct. Ohio 1934); *City of Groves v. Ponder*, 303 S.W. 485, 488 (Tex. Civ. App. 1957); *State ex rel. Milburn v. Pethtel*, 90 N.E.2d 686, 689 (Sup. Ct. Ohio 1950); *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740 (Tex. Civ. App. 1949); *Application of Barber*, 100 N.Y:.S.2d 668, 670 (Sup. Ct. Albany County, N.Y. 1951); *Francis v. Iowa*, 98 N.W.2d 733, 735, 736 (Sup. Ct. Iowa); *State ex rel. Dunn v. Ayers*, 113 P.2d 785, 787 (Sup. Ct. Mont. 1941).

### Defendants are all Employees, have no Office with Powers and Duties, and Are not public Officers of any of the several States

As the Employee Affidavit of Smith's, being **Attachment 1**, clearly under Smith's signature establishes the incontrovertible fact that Smith is a mere "employee", *a fouriori*, Smith is not a public Officer of any of the several States exercising any of the sovereignty of any of the several States if he is a mere employee.

As the fiat Oath of Office of Smith's, being **Attachment 6** of Docket 1 (Çomplaint/Injunction), clearly under Smith's signature establishes the incontrovertible fact that Smith has no Oath of Office to the "Constitution of the United States" as mandated by Article VI of the Constitution of the United States (Supremacy Clause), as mandated by 1 Stat 23 by Congress for all judicial Officers of the several States, as mandated by Article XII section 5 of the Constitution of the State of Alaska for all public officers, *a fouriori*, Smith has not met the mandatory requirements to be a judicial Officer, i.e. public Officer, of any of the several States.

By not qualifying of executing the mandatory requirements of being a judicial Officer of one of the several States by having an Oath of Office to the "Constitution of the United States," *a fouriori*, Smith can't exercise any judicial Power, i.e. sovereignty, of any of the several States.

As fiat Appointment Letter of Smith's with no signature or letterhead, being **Attachment 4** of Docket 1 (Complaint/Injunction), Smith has no Civil Commission under the signature of an

executive Officer of any of the several States to evidence his purported Appointment in violation of ©AS 39.05.035, the holdings of the Supreme Court of the United States that the signature on civil commission is the evidence of the Appointment of *United States v. Le Baron,* 60 U.S. 73, 78 (1856) and *Marbury v Madison*, 5 US 137, 157 (1803), *a fouriori*, there is no Appointment under the signature of any executive Officer of any of the several States.

If there is no Appointment of Smith under the signature of any executive Officer of any of the several States, *a fouriori*, Smith has never entered into the Office of any of the several States by Appointment.

Clugston has been unable to locate in the public records the creation of the "Office" to which Smith was to have entered if he was in fact a judicial Officer of any of the several States.

As the fact evidenced under the signature of Smith's Employee Affidavit (**Attachment 1)**, Smith is a mere employee; and, as the fact under the signature of Smith's purported Oath not complying as required for an Oath of Office as a judicial Officer of any of the several States to the "Constitution of the United States" (**Attachment 6** of the Docket 1 (Complaint/Injunction); and, as the fact of the lack of any evidence of an Office ever being created in any of the several States in the public record; and, as the fact of the lack of any Civil Commission to evidence Smith's appointment under the signature of any executive Officer of the several States (**Attachment 4** of Docket 1 (Complaint/Injunction)), *a fouriori*, ***Smith can not be clothed with the privilege of judicial immunity of judicial Officers, i.e. public Officers, of the several States not being a judicial Officer of any of the several States.***

As King, Romero and Hollenbeck are admitted to being mere employees under the signature of Webb of the Motion; and, as King, Romero and Hollenbeck are mere employees in an "agency" (agent) of some undisclosed entity by operation of Law can't exercise executive

Power of any of the several States involving the fundamental Rights of Clugston; and, as fact no Civil Commission exists in the public record for King, Romero and Hollenbeck being appointed to any Office; and, as fact no Office has been created with Powers and Duties in the public record for which King, Romero and Hollenbeck to enter, *a fouriori*, King, Romero and Hollenbeck are not executive Officers of any of the several States.

As King, Romero and Hollenbeck are not executive Officers of any of the several States, *a fouriori*, King, Romero and Hollenbeck can't exercise any executive Power in any of the several States or over the fundamental Rights of Clugston.

### Webb's Standard of Review – Jurisdiction

Webb's Standard of Review doesn't address the issues of the Complaint, Injunction, Writ of quo Warranto ("Complaint") allegations, facts or jurisdictional elements. More evidence of the bad faith filing into this Court. Webb doesn't establish what facts or jurisdiction subject-matter is lacking, but instead is *sub silentio*, and proceeds with the conclusions only of "what if." This putrescent Motion is evidence of the template type of 12(b)(6) motions used by the attorneys for the Department of Law using dilatory methods against Plaintiffs in general to obfuscate the facts, allegation, and jurisdictional elements.

As Webb did not address one fact, allegation or jurisdictional issue, Clugston is left with no response but to let the Complaint stand as true, and deny in total Webb's climb up Mt. Everest without oxygen inducing hallucinations.

### Webb's *Rooker-Feldman* Doctrine

Webb again misrepresents the facts of the Complaint.

First contained in this fact contained in the purported "MEMORANDUM OPINION AND JUDGMENT" ("Opinion"), being **Attachment 2**, of "The Supreme Court of the State of

Alaska" ("Supreme Court of AK"). Interestingly when the Supreme Court of AK reports their purported decisions to Westlaw, they transmogrify from the "Supreme Court of the State of Alaska" into the "Supreme Court of Alaska." So the first question that is raised is how many hats does this Supreme Court wear? Is the Supreme Court of AK a Supreme Court of any of the several States? There is only one answer, the Supreme Court of AK isn't a supreme Court of any of the several States.

Secondly, contained in the Opinion is the following disclaimer, to wit: "Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d) [ – summary decision isn't defined, so unable to determine what it actually may mean.] Accordingly, this memorandum decision *may not be cited* for any proposition of law or *example of the proper resolution of any issue*." ("Notice") *[Emphasis added]* How is it that Webb can cite this case as to the resolution of any issue, especially concerning Clugston's fundamental Rights with said Notice? By this Notice, which is a fact on the top of the Opinion, is this the Supreme Court of AK making a special finding (sic) just for Clugston, but it has no basis in Law or *stare decisis* understanding the SSS and SSN are an integral element, being that the Supreme Court of AK is deciding issue of "benefits" to which they have no judicial Power of any of the several States to which Clugston wishes not to partake?

Third, as this Opinion is unsigned, there is no evidence of any justice/judge of any of the several States taking a part in said Opinion.

Fourth, Smith, as evidenced by facts presented by Clugston is not a judicial Officer of any of the several States, said Opinion is void as a matter of Law as the Supreme Court of AK has no judicial Power of any of the several States to rule upon issues that are outside of the jurisdiction of any of the judicial Power of any of the several States. Are the justices/judges

ignorant of the issues of Smith's lack of judicial qualifications as a judicial Officer of any of the several States, to which they purportedly supervise?  Are the justices/judges ignorant of the fact that their purported Oath of Office (sic) *is different from Smith's Oath of Office*.

I have attached the following as an Offer of Proof of the purported Oaths of Office of the justices (sic) of the Supreme Court of AK that do not meet the requirements of Article XII section 5 of the Constitution of the State of Alaska for public officers and 1 Stat 23 for judicial Officers of the several States requiring you must authorized to administer and record said oath, being the following:

1.    Alexander O. Bryner, being a certified and true copy of said Oath of Office **Attachment 3**; and,

2.    Warren W. Matthews, being a certified and true copy of said Oath of Office **Attachment 4**; and,

3.    Robert L. Eastaugh, being a certified and true copy of said Oath of Office **Attachment 5**; and,

4.    Dana Fabe, being a certified and true copy of said Oath of Office **Attachment 6**; and,

5.    Walter L. Carpeneti, being a certified and true copy of said Oath of Office **Attachment 7**.

I have attached the following as an Offer of Proof that Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti are mere employees with Employee Affidavits under their personal signatures, being the following:

1.    Alexander O. Bryner, being a certified and true copy of said Oath of Office **Attachment 8**; and,

2.    Warren W. Matthews, being a certified and true copy of said Oath of Office **Attachment 9**; and,

3.    Robert L. Eastaugh, being a certified and true copy of said Oath of Office **Attachment 10**; and,

4.    Dana Fabe, being a certified and true copy of said Oath of Office **Attachment 11**; and,

5.    Walter L. Carpeneti, being a certified and true copy of said Oath of Office **Attachment 12**.

I have attached the following as an Offer of Proof that Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti have no Civil Commission under the signature of any executive Officer of any of the several States, i.e. no evidence of any appointment to any pubic Office in the public form to which the following Offers of Proof impeach any said purported appearance of appointment, to wit:

1.    Alexander O. Bryner, being a true copy of said Oath of Office **Attachment 13**; and,

2.    Warren W. Matthews, being a true copy of said Oath of Office **Attachment 14**; and,

3.    Robert L. Eastaugh, being a true copy of said Oath of Office **Attachment 15**; and,

4.    Dana Fabe, being a true copy of said Oath of Office **Attachment 16**; and,

5.    Walter L. Carpeneti, being a copy of said Oath of Office **Attachment 17**.

Clugston has been unable to locate in the public records the creation of the "Office" to which Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti were to have entered if they were in fact judicial Officers of any of the several States.

As the fact evidenced under each signature of Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti individual Employee Affidavits (**Attachments 3 – 7** respectively) - Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti are mere employees; and, as the fact

evidenced under the each individual signature of Alexander O. Bryner's, Warren W. Matthews', Robert L. Eastaugh's, Dana Fabe's and Walter L. Carpeneti's purported Oaths respectively not complying as required for an Oath of Office as a judicial Officer of any of the several States to the "Constitution of the United States" (**Attachment 8 – 12** respectively); and, as the fact of the lack of any evidence of an Office ever being created in any of the several States in the public record; and, as the fact evidenced by the lack of any Civil Commission to evidence Alexander O. Bryner's, Warren W. Matthews', Robert L. Eastaugh's, Dana Fabe's and Walter L. Carpeneti's appointment under the signature of any executive Officer of the several States (**Attachments 13 - 17** respectively), *a fouriori*, Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti ***can not be clothed with the judicial Power of any of the several States, including, but not limited to adjudicating any of the fundamental Rights of Clugston.***

Fifth, Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti, are all bound the Cooperative Agreement (**Attachment 3** of Docket 1 (Complaint)). As Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti are bound by the Cooperative Agreement Section VI(A) enforcing the SSS federal benefits program in which ***you must have surrendered all of your fundamental Rights secured in the Privileges and Immunities Clause of the Constitution of the United States*** (rights created against the United States for Individuals with no remedy or access to courts for Due Process of Law - *United States v. Babcock*, 250 U.S. 328, 331 (1919), *Allen v. Graham*, 446 P.2d 240, 241-244 (Ct of App. Ariz 1968), *Garza v. Chater*, 891 F.Supp. 464, 466-468 ( N.C. Ill (1995), *Fleming v. Nestor*, 363 U.S. 603, 609-612 (1960)) of "citizens of the United States" (5 U.S.C. § 552a(2)&(13)) subject to performance requirements of a "federal and state

laws and *regulations*" and financial penalties for the Alaska Court System under Cooperative Agreement VI(B) if the Supreme Court of AK doesn't perform as expected which is reviewed by an *Agency* (sic) (*Hayburn's case*, 2 U.S. 408 (1792);  *United States v. Ferreira*, 54 U.S. 40, *United States v. Todd*, 54 U.S. 52, (1794) (ORDER at the end *Ferreira*);  *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 *et seq.* (1995); and *Muskrat v. United States*, 219 U.S. 346 (1911). Alexander O. Bryner, Warren W. Matthews, Robert L. Eastaugh, Dana Fabe and Walter L. Carpeneti are involved in the finances of the Alaska Court System in varying degrees, i.e. having a pecuniary interest in the Issues of the Cooperative Agreement, SSS, and of citizens of the United States in the federal benefit programs.

Clugston has not requested or alleged to have the Supreme Court of AK Opinion overturned, as it has no standing in any Law or Issue of any of the several States by the Supreme Court of AK's own Notice.

Webb's Motion to Dismiss should be Dismissed in total.  An further Webb didn't address the facts presented, the jurisdiction elements with specificity, 1 Stat 23, privileges and immunities, etc., and the fundamental Rights of Clugson (*Corfield v. Coryell*, 6 F.Cas. 546 (Cir. Ct. ED Penn. 1823)  in the Complaint.

My hand,

Leon Cene Clugston

**Certification**

I certify that a true and correct copy of this document and it's attachments were mailed first class to the following parties, to wit:

Eric Smith
435 South Denali
Palmer, AK 99645-6437
907-746-7500

Ray A. Hollenbeck
CSSD
550 W. 7th Avenue Ste 310
Anchorage, Alaska 99501
269-6900 phone
269-6813 Fax

Richard Romero
CSSD
550 W. 7th Avenue Ste 310
Anchorage, Alaska 99501
269-6900 phone
269-6813 Fax

Rachel King
CSSD
550 W. 7th Avenue Ste 310
Anchorage, Alaska 99501
269-6900 phone
269-6813 Fax

Megan R. Webb
Department of Law
Office of the Attorney General
Anchorage, Branch
1031 West 4th Avenue Ste 200
Anchorage, Alaska
907-269-5100

Kevin D. Williams
Department of Law
Office of the Attorney General
Anchorage, Branch
1031 West 4th Avenue Ste 200
Anchorage, Alaska
907-269-5100

Crystal Langham
P.O. Box 879468
Wasilla, Alaska 99687

Date _July 18th, 2006_

_Leon Gene Clugston_
Signature

Opposition to MOTION TO DISMISS                                   Page 21 of 21