RECEIVED
AUG 2 2 2006
CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

# The United States of America
# The United States
# District of Alaska
# District Court of the United States

Leon Gene Clugston
*Plaintiff*

*Versus.*

Eric Smith, individual capacity (personal capacity); and
Kevin D. Williams, individually (personal capacity); and,
Rachel King, individually (personal capacity); and,
Richard Romero, individually (personal capacity); and,
Ray A. Hollenbeck, individually (personal capacity); and,
Crystal Dawn Langham, individually (personal capacity); and,
John Does 1-20
*Defendants*

Case 3:06-cv-00140-JWS

## Motion to Reconsider

*Come now*, Leon Gene Clugston with this **Motion to Reconsider ("Motion")**.

The *first mandatory* ultimate fact of Clugston being a "citizen of the United States"; or, a "citizen of the United States of America" under the protections of the Privileges and Immunities Clause in Article IV Section 2 Clause 1 within the several States as a citizen of one of the several States (fundamental rights – *Corfield v. Coryell,* 6 F.Cas. 546, 551-52 (Cir. Ct. of U.S. E.D. Penn. 1823)) has not been determined to date.

A "citizen of the United States" means an "Individual," (see 5 U.S.C. § 552a(2) & (13)), that is *irrevocably conflated* with all of the *essential elements* of a citizen of the United States which are the following; first, the Social Security Act ("SSA") at 49 Stat. 620 as amended with the required Social Security Number ("SSN"); and, the IRS in 49 Stat 620 Titles VIII & IX; and, the denial of access to the Courts (28 U.S.C. § 1331) and any remedy in the Law in 42 U.S.C. § 405(g) & (h); and, with 26 U.S.C. § 6109(a) the Taxpayer Identification Number ("TIN") *shall be* the SSN; and, mandating the use of the

SSN on the Form 1040 (OMB 1545-0074); and, sitting on a jury in the STATE OF ALASKA (©AS 09.20.010); and, Chapter 7 of Social Security - 42 U.S.C. § 666(a)(13) mandatory use of the SSN including a Driver License ("DL") and Child Custody; and 42 U.S.C. § (a)666(16-17) withholding and suspending a DL and attaching funds in financial organizations; and, the Alaska State Plan including DL suspension administratively (See Complaint **Attachment 31**) and attaching funds with no judgment; and, *mandatory cooperative agreements* between the state courts, law enforcement and others (**Attachment 1,** being 45 CFR § 302.34, and **Attachment 2**, being 45 CFR § 303.107, with both CFRs under the statutory authority of Congress 42 U.S.C Sections 651-658, 660, 664, 666, 667, 1302, 1396(a)(25), 1396b(o), 1396b(p) and 1396(k); and, the cooperative agreements when rights (federal benefits within SSA) are created against the United States for Individuals, Congress can by statute for "citizens of the United States," *deny access to all courts of the United States or the several States, and even deny a remedy* as held in *U.S. v. Babcock*, 250 U.S. 328, 331(1919), *Dismuke v. U.S.*, 297 U.S. 167, 171-72(1936), *Garza v. Chater*, 891 F.Supp. 464, 466-67 (N.D. Ill 1995) and *Allen v. Graham*, 446 P.2d 240, 243-44 (Ct. App. Ariz. 1968).

    Clugston is being vindictively coerced under Bills of Attainder to submit to being a "citizen of the United States" and denying Clugston a means to support his family since this Complaint was filed as evidenced by two *administrative letters to expose Clugston to criminal charges in the Administrative State*, being **Attachment 3** – a Letter dated June 27, 2006 by Precyous P Council and **Attachment 4**, being a Letter dated August 5, 2006 by the administrative "CSSD License Enforcement Team 27."

    Congress has the exclusive legislative Power arising Article 1 Section 8 Clause 4 "To establish an uniform Rule of Naturalization." Regarding a citizen of the United States of America (naturalized or native born), Congress shall not regulate, abridge, or enlarge citizen capacities as held in the adjudged decision of *Osborn v. Bank of the United States*, 22 U.S. 738, 827 (1824).

    See also *United States v. Wong Kim Ark*, 169 U.S. 649, 703-04 (1898); *Schneider v. Rusk*, 377 U.S. 163, 166-67 (1964); *Mackenzie v. Hare*, 239 U.S. 299, 310 (1915).

Congress regulates, abridges and enlarges benefits of a "citizen of the United States", but not a "citizen of the United States of America or an American citizen."

In the adjudged decision of *State v. Hawkins*, 257 P. 411, 413-418 (Sup. Ct. Mont. 1927) is an exhaustive examination of the ***essential elements*** to be a "public Officer" of a civil nature in any of the several States and the requirements pertaining to the creation of an "Office" in any of the several States based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, and this holding is ibid at 418, to wit:

> After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it **a public office of a civil nature**: (1) It **must be created by the Constitution or by the Legislature** or created by a municipality or other body through authority conferred by the Legislature; (2) it **must possess a delegation of a portion of the sovereign power of government**, to be exercised for the benefit of the public; (3) the **powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority**; (4) the **duties must be performed independently and without control of a superior power, other than the law**, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it **must have some permanency and continuity**, and not be only temporary or occasional. In addition, in this state, **an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority.** *[Emphasis added]*

This Court may not presume the existence that any of the Defendants are in fact either judicial Officers of the several States or executive Officers of the several States, *ibid* at 414, " . . . we may not presume he is an officer; it must be shown.  \* \* \*  It must appear in the record" (citations omitted).

Another extensively researched case on "public Officer" and the requirement of the creation of an "Office" is *State v. Cole*, 148 P. 551, 552 *et seq.* (Sup. Ct. Nev. 1915) which is based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, held *ibid* at 552 an Office can't spring into existence, but must be created, to wit:

> An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the Constitution, by legislative enactment, or by some municipal body, pursuant to authority delegated to it. "All public offices must originally have been created by the sovereign as the foundation of government."

In the adjudged decision in *Hawkins, supra.* at 415 citing the holding of *State v. Spaulding*, 72 N.W. 288, 291 (Sup. Ct. Iowa 1897), the distinction of a "position", i.e. mere employee is explicated from an [public] officer, to wit:

> "A **position**, the **duties** of which \* \* \* **can be changed at the will of the superior,** \* \* \* is not an

office, but a mere employment, and the incumbent is not an officer, but a **mere employee**."
*[Emphasis added]*

And further, in the adjudged decision of *Hawkins, supra.*, at 417 explicating when a "position" is created not by force of law, but by a contract of employment, it isn't an "office", "When a position is created, not by force of law but by contract of employment, the employment does not rise to the dignity of an office."

A "public Officer" as distinguished from an "employee" must be invested by law with a portion of the state's sovereignty for the public benefit largely independent of the control of others and authorized to exercise functions either of executive, legislative, or judicial character. See *State Ex rel. Newman v. Skinner*, 191 N.E. 127, 128 (Sup. Ct. Ohio 1934); *City of Groves v. Ponder*, 303 S.W. 485, 488 (Tex. Civ. App. 1957).

The five (5) *essential elements* of a public office of a civil nature as held in *Hawkins, supra.*, are **all non-existence** in the public records and public statutes for **Smith, Williams, King, Romero and Hollenbeck** ("Defendants"). From the non-existence of *all* of ultimate facts of a public office of a civil nature in the public records for the Defendants flows *a fortiori* none of the Defendants exercise any judicial Power in any of the several States or executive Power of any of the several States. The non-existence *all* of the *essential elements* of a public office of a civil nature for all Defendants *flows a fortiori there can be no judicial immunity or executive immunity.*

The Rooker-Feldman was finally interred as stated in *Lance v. Dennis*, 126 S.Ct. 1198, 1204 (*dissenting opinion* 2006), to wit:

> Last Term, in Justice GINSBURG's lucid opinion in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), **the Court finally interred the so-called "*Rooker-Feldman* doctrine."** And today, the Court quite properly disapproves of the District Court's resuscitation of a doctrine that has *1204 produced nothing but mischief for 23 years. *[Emphasis added]*

And further the Rooker-Feldman does not preclude nonparties to an earlier state-court judgment in the pronouncement of *Dennis ibid at 1202*, to wit:

> **The District Court erroneously conflated preclusion law with Rooker-Feldman. Whatever the impact of privity principles on preclusion rules, Rooker-Feldman is not simply preclusion by another name.** The doctrine applies only in "limited circumstances," Exxon Mobil, supra, at 291, 125 S.Ct. 1517, **where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. The Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the**

judgment.[FN2]

> FN2. In holding that **Rooker-Feldman** does not bar plaintiffs here from proceeding, we need not address whether there are any circumstances, however limited, in which **Rooker-Feldman** may be applied against a party not named in an earlier state proceeding-e.g., where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent.

And further, preclusion using Rooker-Feldman is not a jurisdictional matter as held in *Exxon v. Saudi Basic Industries Corp.*, 544 U.S. 280, 282, 286, 293 (2005).

And further, in *Dennis, supra.*, at 1201 Weber's and Langham's use of the Rooker-Feldman as preclusion law has no application of actions and determination made by an agency, of which in the Complaint is replete with Attachments as Offers of Proof of facts of Agency determinations which was the Issue in the Supreme Court of the State of Alaska, to wit:

> [See] Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 644, n. 3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (**Rooker-Feldman "has no application to judicial review of executive action, including determinations made by a state administrative agency"**);

Judge Segwick is totally off point (*Cohens v. Virginia*, 19 U.S. 264, 399-400 (1821)) in *his* ORDER @ Docket 23, has chosen to remain *sub silentio* on all of the Defendants except Smith, has cited cases whether Smith *appears* to be doing judicial acts, but totally ignoring the mandatory essential elements of a public office of a civil nature ***prior to being clothed with the immunities of said public Office, has ignored the ultimate facts plead and submitted as Offers of Proof to protect a fellow judge who exercises no judicial Power of any of the several States***. Segwick then uses the Supreme Court of Alaska *Administrative Decision for "citizens of the United States"* as *res judicata* when Clugston isn't a "citizen of the United States. " Under the SCO's of AK Civil Rule 91, there is no Writ of Quo Warranto in the courts of Alaska.

Then Segwick states the USDC has no jurisdiction, but proceeds to via his *ipse dixit* pontification to confirm an administrative "obligation" and "pay up." Article III courts of the United States have no jurisdiction in any of the several States of administrative issues. See *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700 (1927). Therefore Segwick should act like an Article III judge and vacate his prior ORDER and ***rule on all of the ultimate facts*** in the Complaint and this Motion.

My Hand, *[signature]*
Aug -22- 2006

**Certification**

I certify that a true and correct copy of the Motion to Reconsider and it's attachments were mailed first class to the following parties, to wit:

Eric Smith
435 South Denali
Palmer, AK 99645-6437
907-746-7500

Ray A. Hollenbeck
CSSD
550 W. 7th Avenue Ste 310
Anchorage, Alaska 99501
269-6900 phone
269-6813 Fax

Richard Romero
CSSD
550 W. 7th Avenue Ste 310
Anchorage, Alaska 99501
269-6900 phone
269-6813 Fax

Rachel King
CSSD
550 W. 7th Avenue Ste 310
Anchorage, Alaska 99501
269-6900 phone
269-6813 Fax

Megan R. Webb
Department of Law
Office of the Attorney General
Anchorage, Branch
1031 West 4th Avenue Ste 200
Anchorage, Alaska
907-269-5100

Kevin D. Williams
Department of Law
Office of the Attorney General
Anchorage, Branch
1031 West 4th Avenue Ste 200
Anchorage, Alaska
907-269-5100

Crystal Langham
P.O. Box 879468
Wasilla, Alaska 99687

Date Aug-22-2006
*[signature]*